Walter BOROWSKI

v.

VITRO CORP., et al.

Civ. No. JFM–85–600.

United States District Court, D. Maryland.

May 1, 1986.

George Beall, Miles & Stockbridge, Baltimore, Md., for plaintiff.

George W. Johnston, Venable, Baetjer and Howard, Baltimore, Md., for defendant.

## MEMORANDUM

MOTZ, District Judge.

This action was initially instituted by plaintiff pro se in the United States District Court for the Northern District of New York. Plaintiff alleged that he had been wrongfully treated in his employment because of his age. Defendants moved to transfer the action to this Court and the motion was granted. Defendants then filed a motion to dismiss. After a hearing on the motion, this Court concluded that because of the complexity of the issues presented plaintiff should be represented by counsel. At the request of the Court plaintiff's present counsel reviewed the case and, after meeting with plaintiff, agreed to represent him.[1]

Plaintiff then moved to file an amended complaint. The proposed amended complaint contains one count under the ADEA, one count under ERISA and four counts alleging state law claims of breach of contract, interference with contractual relations, fraud and deceit and intentional infliction of emotional distress. Defendants have opposed plaintiff's motion for leave to amend, or, in the alternative, moved to dismiss the amended complaint for failure to state any claims upon which relief can be granted. On April 18, 1986, a hearing was held.

### The Allegations in the Amended Complaint

The facts as alleged in the proposed amended complaint are as follows:

Plaintiff worked at defendant Vitro Laboratories from November 26, 1973 to March 19, 1982. During that period he received an unbroken chain of positive performance appraisals, together with accompanying increases in salary. However, in January 1982, defendant Williams, the group supervisor of plaintiff in Vitro's management services division, ordered section leaders within that division to "get rid of the dead wood" under their supervision. As a result of those instructions, plaintiff was put on a transfer list and was told that if efforts to place him in another department failed, he would be laid off on March 19, 1982. Before being laid off plaintiff identified an open position in another department for which he was qualified but, after having applied for that position and being informed that his application had been accepted and that an interview had been scheduled, he was told that the position had been "administratively cancelled." On March 19th he was laid off.

On March 18, 1982, defendant Gormley wrote a letter to plaintiff, in response to previous correspondence, advising plaintiff that Vitro would actively compare his qualifications with the requirements of all future job openings in an effort to find an acceptable position for him. From March 19, 1982 until the end of June 1982, plaintiff made several telephone inquiries to Vitro's personnel department but received no communications in return regarding the possibility of reinstatement. He also sought employment positions with other employers but was unsuccessful.

In mid-June 1982 plaintiff retained an attorney to prosecute a claim against Vitro.

---

1. The Court wishes to express its appreciation to plaintiff's counsel for having taken on this responsibility and performing it well.

Plaintiff advised his attorney that his paramount objective was to obtain reinstatement to his former position or a comparable job at Vitro. Plaintiff's attorney contacted Vitro and within two weeks plaintiff was offered reemployment.

On July 6, 1982, plaintiff went back to work at Vitro. He was placed as a staff specialist in a department in which he had not worked before and was assigned tasks which varied significantly from those which he had previously performed. He was not adequately trained by Vitro for his new position. Nevertheless, through his own initiative he learned his new job and performed all aspects of it in a manner which met or exceeded performance standards. In August 1982, in accordance with company policy, his performance was evaluated and although he was not given a copy of his written appraisal, he was advised that he was performing at least satisfactorily in all respects. An eighty day evaluation of plaintiff's performance, which should have been performed in accordance with company policy, was not performed.

Plaintiff was thereafter hospitalized with a pinched nerve in his spine. While in the hospital, he was given a copy of a performance appraisal dated January 26, 1983, which detailed numerous alleged performance deficiencies. Plaintiff did not believe that this evaluation was fair or accurate and wrote to defendant Winfrey in protest. On March 14, 1983, plaintiff received his annual salary review action form which, because of his January 26, 1983 performance appraisal, indicated that he would re-ceive only a small increase in salary. On the same day, plaintiff wrote a letter to Winfrey requesting that the company reconsider its decision. Upon receiving no response plaintiff wrote to Winfrey again on April 29, 1983, detailing the substance of his salary grievance. Plaintiff finally received a reply dated May 24, 1983, denying his request for reconsideration.

On August 17, 1983, plaintiff filed a charge of discrimination with the EEOC. In September 1983 he received another negative evaluation from Vitro. On November 28, 1983, believing that there was nothing he could do to be treated in a fair and non-discriminatory manner, he submitted his resignation as of December 2, 1983.

## I.

 Defendants challenge plaintiff's ADEA claim on the grounds that it is untimely and that it exceeds the scope of the charge which plaintiff filed with the EEOC, both in the broadening of the matters alleged and in the addition of individual defendants. The Court finds that the claim is untimely and therefore does not reach the issues of scope.[2]

Plaintiff filed his charge with the EEOC on August 17, 1983, 191 days after the occurrence of the last act of discrimination (the January 26, 1983 performance appraisal) which he alleges in his charge. Two days later the EEOC transmitted the charge to the Montgomery County Human Relations Commission. Plaintiff had not himself filed a charge with any state or

---

**2.** The issue of whether a person not named in an EEOC charge may be named as a defendant in a subsequent lawsuit is a recurring one. Although Title VII explicitly authorizes suit in federal court only "against the person named in the charge," 42 U.S.C. Section 2000e–5(f)(1), and the ADEA contains a somewhat similar provision, 29 U.S.C. section 626(d), the case law is unclear as to whether these provisions are themselves dispositive of the issues. This Court believes that the issue should be resolved on a case-by-case basis upon the following principle: Where the addition of a new defendant in the court action is necessary to preserve a plaintiff's ADEA or Title VII rights, the addition should be allowed (if other circumstances, such as the naming of the defendant in the body of the EEOC charge, warrant); in contrast, the addition of a new defendant should not be allowed if a plaintiff's ADEA or Title VII rights can be fully enforced without the addition. Given the broad remedial purposes of the ADEA and Title VII, a technical error in the naming of the parties in the EEOC charge or in the subsequent court action should not deprive a plaintiff of his rights. On the other hand, the purpose of Title VII is to provide an expeditious remedy and this purpose is not served when a plaintiff, for whatever reason, ladens a law suit with unnecessary individual defendants whom he has not seen fit to name in the EEOC charge.

local agency.[3] Maryland law requires that a claim of employment discrimination be filed within 180 days of the alleged unlawful act.

*Timely State Filing*

The threshold—and in this Court's view the dispositive—issue presented is whether in order to benefit from the 300 day filing limitations actions period provided by 29 U.S.C. section 626(d)(2), a claimant must file a timely claim under state law. This issue (and the similar issue under Title VII) is one on which there is a clear division in the authorities. In this District some judges have held that a timely state filing is necessary to trigger the 300 day period, *see Green v. Anchor Hocking Corp.*, Civil Action R–79–1862 (D.Md. March 16, 1982) (Ramsey, J); *Mobley v. Acme Markets, Inc.*, 473 F.Supp. 851, 857 (D.Md.1979) (Harvey, J.), while other judges have held an untimely state filing will suffice. *See Haller v. Butler Shoe Corp.*, 595 F.Supp. 998 (D.Md.1984) (Northrop, J.); *Soble v. University of Maryland*, 572 F.Supp. 1509 (D.Md.1983) (Miller, J.). The Fourth Circuit has expressly reserved ruling on the issue. *See Dixon v. Westinghouse Electric Corp.*, 787 F.2d 943, 946 n. 3 (4th Cir.1986). The courts' uncertainty is traceable to inartful statutory language and an ambivalence in pertinent decisions of the Supreme Court.[4]

The filing of a timely state charge is not expressly made a condition to the availability of the extended 300 day filing period in section 626(d)(2). Language in *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979), can be cited for the proposition that this is conclusive: "We will not attribute to Congress an intent to add to ... [the] explicit requirements [of section 626(d)(2)]." 99 S.Ct. at 2075. However, the Iowa statute involved in *Oscar Mayer* contained a limitations period of 120 days, which is 60 days less than the 180 day period which Congress had prescribed as proper for the assertion of discrimination claims. 29 U.S.C. section 626(d)(1); 42 U.S.C. section 2000e–5(e). The Court held that a state cannot diminish the federal right by decreasing the filing period to one shorter than provided by federal law. However, the Court also suggested that a state could avoid the bypassing of its administrative agencies by establishing an 180 limitations period of its own (and providing for a tolling of that period by the filing of a timely federal charge). 99 S.Ct. at 2076 n. 11. Further, in *Mohasco Corp. v. Silver*, 447 U.S. 807, 100 S.Ct. 2486, 2496–97, 65 L.Ed.2d 532 (1980), the Court indicated that the most straightforward reading of the administrative filing limitations provision of Title VII is that a state charge must be filed within 180 days even though the 180 day period is not expressly required by the statute.

■ This Court believes that the sounder view is that a timely state filing is a pre-

---

**3.** Defendants contend that the EEOC's transmission of plaintiff's charge to the Montgomery County Human Relations Commission was insufficient to "commence proceedings under State law" both as a matter of federal law (under *Dixon v. Westinghouse Electric Corp.*, 787 F.2d 943, 946 n. 3 (4th Cir.1986)) and as a matter of state law. In light of this Court's holding that plaintiff's failure (or the EEOC's failure on his behalf) to file a state charge within 180 days is dispositive of the limitations issue, the Court need not address these issues. However, there is at least a substantial question as to whether the *Dixon* rationale applies in the ADEA context. *See* n. 6, *infra.*

**4.** Most circuit courts that have considered the issue have held that a timely filing with a state agency is not required under either Title VII or the ADEA for the 300 day EEOC filing period to apply. *See Thomas v. Florida Power & Light*

Co., 764 F.2d 768, 771 (11th Cir.1985); *Howze v. Jones & Laughlin Steel Corp.*, 750 F.2d 1208, 1210–11 (3rd Cir.1984); *Smith v. Oral Roberts Evangelistic Ass'n*, 731 F.2d 684, 688–90 (10th Cir.1984); *Rasimas v. Michigan Dept. of Mental Health*, 714 F.2d 614, 620–22 (6th Cir.1983), *cert. denied*, 466 U.S. 950, 104 S.Ct. 2151, 80 L.Ed.2d 537 (1984); *Aronsen v. Crown Zellerbach*, 662 F.2d 584 (9th Cir.1981), *cert. denied*, 459 U.S. 1200, 103 S.Ct. 1183, 75 L.Ed.2d 431 (1983); *Ciccone v. Textron, Inc.*, 651 F.2d 1 (1st Cir.) *cert. denied*, 452 U.S. 917, 101 S.Ct. 3052, 69 L.Ed.2d 420 (1981); *Goodman v. Heublein, Inc.*, 645 F.2d 127 (2nd Cir.1982). At least one court of appeals, however, has stated in dictum that a timely state filing is required as long as the state limitations period is at least 180 days. *Martinez v. Automobile, Aerospace & Agricultural Workers*, 772 F.2d 348 (7th Cir.1985).

requisite for the availability of the 300 day federal filing period under the ADEA or Title VII (provided that the state limitations period is at least 180 days.) [5] This conclusion is compelled by the very purpose of the extended filing period. Congress intended to give complainants an additional 120 days to file their federal claim after first pursuing their state claim, not to allow "complainants in some states ... to proceed with less diligence than those in other states." *Mohasco Corp. v. Silver,* 100 S.Ct. at 2494, from *Moore v. Sunbeam Corp.,* 459 F.2d 811, 825 n. 35 (7th Cir. 1972).

Moreover, while it might appear at first blush that the remedial nature of the ADEA and Title VII argue in favor of allowing the extended filing period in all cases, in fact the reverse is true. The requirement that complainants file a timely state charge is the key to making the administrative limitations provisions of the two statutes sensible and comprehensible. Without it they become prolix, the delight of the employment law specialist but the bane of the general practitioner and the pro se litigant. In the place of a simple and straightforward test—that the complainant file a timely state claim (if the state filing period is at least 180 days)—there is substituted the less clearly defined formulation (nowhere expressly mentioned in the governing statutes) that the state claim must be filed within 240 days unless, as to a claim filed more than 240 days but less than 300 days after the occurrence, the complainant can persuade the state agency

to terminate its proceedings before 300 days have expired. *See Soble v. University of Maryland, supra.* Further, complicating that rule is the fact that it is applicable in Title VII cases but presumably not in ADEA cases since the ADEA does not contain an analogue to 42 U.S.C. section 2000e–5(e).[6]

Other rather arcane problems of statutory construction are caused by the failure to adopt the brightline rule requiring the timely filing of a state charge. Thus, for example, while the EEOC's transmittal of a charge filed with it more than 180 days after the occurrence of the alleged violation has been held not to be sufficient to "initially institute proceedings" under Title VII, *see Dixon v. Westinghouse, supra,* such a transmittal would seem to be sufficient to "commence proceedings" under state law for purposes of the ADEA.[7] Such complexities are confusing and unnecessary. They are eliminated by the application of the rule which is here adopted.

*Equitable Tolling*

■ Plaintiff claims that Vitro rehired him for the alleged purpose of lulling him into not asserting his rights and that this serves to equitably toll the limitations period. If plaintiff had filed a timely claim when he concluded after being rehired that he was still being discriminated against, his tolling argument might well have enabled him to include his layoff claim with his post-hiring claims. However, equitable tolling cannot justify the untimeliness of his claim after being rehired because he

---

5. The filing of the state charge can, of course, be effected by the timely referral of a charge by the EEOC to the state agency. *See Love v. Pullman Co.,* 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972).

6. Even under the rule adopted here, in states where the state filing period is longer than 240 days (or in a state where the filing period is less than 180 days and therefore not federally effective) a distinction would have to be drawn between ADEA and Title VII cases. In such states Title VII claimants must, because of the "initial processing" requirement, file their state claims within 240 days in order to be assured of their ability to file a claim with the EEOC within 300

days. *See Mohasco Co. v. Silver,* 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980). In contrast, the filing deadline for a state claim under the ADEA in such states would seem to be either indefinite, *see Oscar Mayer Co. v. Evans,* 441 U.S. 750, 99 S.Ct. 2066, 2076 n. 13, or 22, 60 L.Ed.2d 609 (or, in the case of a wilful violation, 34) months. *See* 29 U.S.C. Sections 633(b) and 255.

7. This is so because the ADEA provides that the EEOC has concurrent jurisdiction with state agencies from the outset in age discrimination cases. *Cf. Oscar Mayer Co. v. Evans,* 99 S.Ct. at 2075–76 n. 11. In any event, the *Dixon* rule itself is an unnecessary complexity.

does not allege that during the 191 day period between the last act of discrimination and the date of filing the company was lulling him into not asserting his claims.

## II.

■ Defendants move to dismiss the ERISA claim on the ground that, as plaintiff concedes, he has made no attempt to avail himself of the administrative remedies provided for in the pension plan in which he claims he was denied vestiture. The cases are clear that the exhaustion of such remedies is a jurisdictional prerequisite to filing suit. *See, e.g., Kross v. Western Elec. Co.,* 701 F.2d 1238, 1244–45 (7th Cir.1983); *Amato v. Bernard,* 618 F.2d 559 (9th Cir.1980).

## III.

■ Citing *Powell v. Chesapeake & Potomac Telephone Co.,* 780 F.2d 419, (4th Cir.1985), defendants argue that all of plaintiff's state law claims are preempted by ERISA. There is no question that to the extent that plaintiff seeks vestiture in a pension plan or similar relief, his claims are preempted. However, the fact that a portion of the relief which he requests might involve matters preempted by ERISA does not mean that the causes of action are preempted in their entirety. Unlawful conduct may have diverse consequences which are remediable in diverse ways.

Nevertheless, plaintiff's state law claims will be dismissed for the reason that they are insufficient under Maryland law.

■ Plaintiff's breach of contract claim is based upon an alleged violation by the defendant of an obligation to deal fairly and in good faith with its employees. Plaintiff can point to no specific contract provision or written policy to support his claim and company policies of a general nature do not provide a ground for such a claim. *See Staggs v. Blue Cross of Maryland,* 61 Md.App. 381, 486 A.2d 798, *cert. denied,* 303 Md. 295, 493 A.2d 349 (1985). Nor does Maryland law recognize a broad implied promise of good faith and fair deal-

ing in an at will employment relationship. *See, e.g., Adler v. American Standard Corp.,* 291 Md. 31, 432 A.2d 464 (1981); *Vasques v. National Geographic Society,* 34 F.E.P. Cases (B.N.A.) 295 (D.Md.1982).

■ Plaintiff's claim for tortious interference with contractual relations against the individual defendants fails both because he has not sufficiently alleged a breach of contract and because there are no facts pled which suggest that the individual defendants acted for their own purposes rather than for the purpose of the defendant. *See, e.g., Continental Cas. Co. v. Mirabile,* 52 Md.App. 387, 449 A.2d 1176 (1982); *George A. Fuller Co. v. Chicago College of Osteopathic Medicine,* 719 F.2d 1326 (7th Cir.1983); *Lyon Ford, Inc. v. Ford Marketing Corp.,* 337 F.Supp. 691 (E.D.N.Y.1971).

■ Plaintiff's claim for intentional infliction of emotional distress is likewise faulty. The Maryland Court of Appeals has made it clear that a trial court plays a critical screening role in determining whether or not a plaintiff's allegations are sufficient when intentional infliction of emotional distress is charged. *See, e.g., Harris v. Jones,* 281 Md. 560, 380 A.2d 611 (1977); *Leese v. Baltimore County,* 64 Md. App. 442, 497 A.2d 159, *cert. denied,* 305 Md. 106, 501 A.2d 845 (1985). It is clear, comparing this case to cases where the Maryland courts have found the allegations (or evidence) lacking, that plaintiff's claim here is insufficient. *See, e.g., Beye v. Bureau of National Affairs,* 59 Md.App. 642, 477 A.2d 1197 (1984); *Continental Cas. Co. v. Mirabile,* 52 Md.App. 387, 449 A.2d 1176 (1982); *Leese v. Baltimore County, supra.*

■ Plaintiff's claim for fraud is based upon essentially the same facts upon which he grounds his contention of equitable tolling on the ADEA claim. He asserts that the company defrauded him by rehiring him for the purpose of inducing him not to assert his rights in connection with his March 1982 layoff while intending to treat him unfairly and improperly after his rehir-

ing so as to make his continued employment intolerable. The difficulty with plaintiff's claim is that there are insufficient facts to support his conclusory allegations. His assertions of fraud are based entirely upon his own perception that he was unfairly evaluated after being rehired. He was not disciplined during this period and, although he believes it to have been insufficient, he was given a small raise in pay. He was not terminated after having been rehired; it is he who resigned. These factual allegations, neither individually nor in the aggregate, support an inference of fraud and cannot withstand a motion to dismiss.

A separate order granting plaintiff leave to file an amended complaint but simultaneously dismissing the amended complaint is being entered herewith.

### ORDER

For the reasons stated in the memorandum entered herein, it is this 1st day of May 1986,

ORDERED

1. That plaintiff's motion for leave to file an amended complaint is granted;

2. Defendants' motion to dismiss the amended complaint is granted; and

3. Judgment is entered in favor of the defendants against plaintiff.