Thomas B. ADAMS

v.

**CATALYST RESEARCH, A DIVISION OF MINE SAFETY APPLIANCES CO., INC.**

**Civ. No. Y–87–113.**

United States District Court,
D. Maryland.

April 30, 1987.

Thomas J. Dolina, Towson, Md., for plaintiff.

Emmett F. McGee, Jr., Baltimore, Md., and Patrick W. Ritchey, Pittsburgh, Pa., for the defendant.

## MEMORANDUM

JOSEPH H. YOUNG, District Judge.

Plaintiff Thomas B. Adams was employed by Catalyst Research, a division of Mine Safety Appliances Co., Inc., from May 14, 1979 until August 19, 1986. Pursuant to the employment contract, Mine Safety Appliances established a pension plan for plaintiff. His rights to the pension benefits were scheduled to vest on May 14, 1989.

Adams filed suit against Mine Safety Appliances, alleging that his discharge resulted solely from an intention to cause plaintiff to forfeit his pension rights. Plaintiff's three-count complaint sets forth claims for breach of contract, wrongful discharge, and a right to recover under the doctrine of quasi-contract. Defendant has moved to dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). For the following reasons, defendant's motion to dismiss will be granted in part and denied in part.

## COUNT I: BREACH OF CONTRACT

Plaintiff asserts in Count I that his employment contract contained an implied condition of fair dealing and good faith, that his discharge constituted unfair dealing and bad faith, and, consequently, that Mine Safety Appliances breached his contract.

■■■ Plaintiff was an at-will employee. As a general rule, Maryland adheres to the common law principle "that an employment contract of indefinite duration, that is, at will, can be legally terminated at the pleasure of either party at any time." *Adler v. American Standard Corp.*, 291 Md. 31, 35, 432 A.2d 464 (1981). *Accord Page v. Carolina Coach Co.*, 667 F.2d 1156, 1158 (4th Cir.1982). A covenant of good faith and fair dealing is not implied in an at-will relationship. *Borowski v. Vitro Corp.*, 634 F.Supp. 252, 258 (D.Md.1986) ("Nor does Maryland law recognize a broad implied promise of good faith and fair dealing in an at will employment relationship."); *Vasques v. Nat'l Geographic Society*, 34 F.E.P. Cases 295, 296 (D.Md.1982) [Available on WESTLAW, DCT database]. Because Maryland does not recognize a cause of action based on an implied covenant of good faith and fair dealing in an at-will employment contract, Count I fails to state a claim upon which relief can be granted and shall be dismissed. Fed.R.Civ.P. 12(b)(6).

## COUNT II: WRONGFUL DISCHARGE

■■■ Maryland recognizes a cause of action for abusive or wrongful discharge of an at-will employee "when the motivation for the discharge contravenes some clear mandate of public policy." *Adler, supra,* 291 Md. at 47, 432 A.2d 464. Plaintiff alleges in Count II that he suffered a wrongful discharge because the "public policy of Maryland and the public policy of the United States, as stated in ERISA, U.S.C. 29, Section 1001, forbids the discharge of any employee when the discharge is solely based on an intentional effort to cause that employee to forfeit his pension benefits."

■■■ Any claim Adams may have for abusive discharge under Maryland common law is preempted by the Employee Retire-

ment Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"). The Act preempts all state laws which "relate to" employee benefit plans covered by ERISA. 29 U.S.C. § 1144(a). "The phrase 'relate to' has been read expansively, giving 'unparalleled breadth' to the preemption provision." *Salomon v. Transamerica Occidental Life Ins. Co.*, 801 F.2d 659, 661 (4th Cir.1986), *quoting Holland v. Burlington Industries, Inc.*, 772 F.2d 1140, 1147 (4th Cir.1985), *aff'd,* —— U.S. ——, 106 S.Ct. 3267, 91 L.Ed.2d 559 (1986). The Supreme Court recently noted that the "express preemption provisions of ERISA are deliberately expansive, and designed to 'establish pension plan regulation as exclusively a federal concern.'" *Pilot Life Ins. Co. v. Dedeaux,* —— U.S. ——, 107 S.Ct. 1549, ——, 95 L.Ed.2d 39 (1987) (available on Westlaw).

A law "relates to" an employee benefit plan "if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983). The preemption clause is not limited to state laws specifically designed to affect employee benefit plans. *Id.* at 98, 103 S.Ct. at 2900. Common law causes of action are also preempted by ERISA. *See Salomon, supra*, 801 F.2d at 661; *Powell v. C & P Tele. Co. of Va.*, 780 F.2d 419, 421–22 (4th Cir. 1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 2892, 90 L.Ed.2d 980 (1986).

Plaintiff's state-law claim that he was wrongfully discharged to prevent him from obtaining pension benefits "relates to" his employee benefit plan and is preempted by ERISA. Indeed, 29 U.S.C. § 1140 provides a cause of action for wrongful deprivation of pension rights by a pretextual discharge prior to vesting.[1] *See, e.g., Baker v. Kaiser Alum. and Chem. Corp.*, 608 F.Supp. 1315, 1322 (N.D. Cal.1984) (plaintiff's claim alleging discharge in violation of a public policy re-

garding employment benefits is preempted by 29 U.S.C. § 1140); *Ursic v. Bethlehem Mines*, 556 F.Supp. 571 (W.D.Penn.), *aff'd in pertinent part,* 719 F.2d 670 (3d Cir. 1983). Accordingly, plaintiff's claim for wrongful discharge under Maryland law fails to state a claim upon which relief can be granted, and must be dismissed. Fed.R. Civ.P. 12(b)(6).

To the extent that plaintiff's inartful drafting of Count II states a claim for relief under ERISA, that portion of the Count still stands, and plaintiff is granted leave to amend his complaint to state this claim, and any other claim he may have under ERISA, with more particularity.

## COUNT III: QUASI–CONTRACT

Count III sets forth a quasi-contract claim similar to that articulated in the pre-ERISA decision of *Lucas v. Seagrave Corp.*, 277 F.Supp. 338 (D.Minn.1967). In *Lucas*, the plaintiff class asserted that their discharges constituted a "group termination" which, unlike an individual's discharge, was not a contingency covered by the pension provisions of their contract:

> [E]mployees are aware that their interests in the [pension] plan cease when their employment relationship is severed and that they take this risk.... However, a quasi-contractual recovery has been held available even though it appears that employees have agreed to assume the risk of contingencies which may render impossible the complete performance of a service contract. If it appears that the conditions were not inserted in the contract for such a contingency as had happened, recovery should be allowable for the benefit the employer has received....
>
> [A]n employer's pension plan contributions are determined by an actuarial formula which assumes that any employee whose employment is terminated forfeits

**1.** 29 U.S.C. § 1140 provides in part: "It shall be unlawful for any person to discharge ... a participant or beneficiary ... of an employee benefit plan ... for the purpose of interfering with the attainment of any right to which such participant may become entitled under the

plan.... The provisions of section 1132 of this title shall be applicable in the enforcement of this section." Section 1132 authorizes civil actions by participants or beneficiaries to enforce their rights or redress violations.

his pension benefits.... However, such an assumption may not cover the occurrence of a group termination.... Where there is a termination of a substantial number of the plan participants, it seems clear that such a turnover is not anticipated by the formula. The result is that an employer who has discharged a relatively large number of employees receives a windfall, palpably in excess of actuarial assumptions, in the form of pension credit forfeitures which he can use to relieve for some time his future premium liability for the remaining employees.

*Lucas, supra,* 277 F.Supp. at 345. The court held that "where the substantial portion of a plan's participants are terminated and the employer benefits by recapturing his contributions, as well as by the years of employees' service at compensation less than the actual value of such service, it does not appear extreme or unfair to say that there may be a recovery on a quasi-contractual unjust enrichment theory." *Id.* at 346.

In the instant case, Adams claims that his discharge was part of a planned termination of similarly situated employees. He argues that these discharges constitute a group termination which was not a contemplated contingency that could cause plaintiff to forfeit his pension rights. Therefore, Adams claims, he is entitled to recover the present value of his pension under a quasi-contractual theory.

■ This cause of action also "relates to" Adams' employee benefit plan and, accordingly, is preempted by ERISA. Count III therefore fails to state a claim upon which relief may be granted and shall be dismissed. Fed.R.Civ.P. 12(b)(6).

CONCLUSION

Defendant's motion to dismiss is hereby granted as to Count I, Count III, and the claim for wrongful discharge under Maryland law in Count II, and denied as to the ERISA claim set forth in Count II. Plaintiff is hereby granted leave to amend his complaint within twenty (20) days to state his ERISA claims with more particularity.