**Primrose PRATT, Plaintiff,**

v.

**DELTA AIR LINES, INC., Defendant.**

**Civ. No. H–86–1328.**

United States District Court,
D. Maryland.

Aug. 11, 1987.

Richard Murray, Washington, D.C., for plaintiff.

Hunter R. Hughes, and Rogers & Hardin, Atlanta, Ga., and Jana H. Carey and Venable, Baetjer and Howard, Baltimore, Md., for defendant.

## MEMORANDUM OPINION

ALEXANDER HARVEY, II, Chief Judge.

Plaintiff Primrose Pratt (hereinafter "Pratt") was formerly employed by defendant Delta Air Lines, Inc. (hereinafter "Delta"). Following a customer's complaint, Pratt was fired. She is here seeking damages from her former employer resulting from this termination of her employment. Three theories of recovery are advanced: (1) negligence, (2) defamation and (3) wrongful dismissal. Subject matter jurisdiction is founded upon diversity of citizenship. 28 U.S.C. § 1332.

Following discovery undertaken by the parties pursuant to a Scheduling Order issued by the Court, defendant Delta has filed a motion to dismiss or for summary judgment. In support of its motion, Delta has submitted memoranda, affidavits and exhibits, including excerpts from the transcripts of various depositions. Plaintiff has filed an opposition to the pending motion together with her own affidavit and a memorandum of law, and defendant has replied to the opposition. A conference has been held in chambers at which time the issues and facts presented by the pending motion were discussed with counsel. Thereafter, the parties were permitted to file supplemental briefs.

The record is a complete one and no formal hearing is necessary. See Local Rule 6. For the reasons stated herein, summary judgment will be granted in favor of the defendant.

## I

### FACTS

The relevant facts in this case are clear and undisputed. At the time of the matters in dispute, plaintiff Pratt was a Maryland resident and was employed by Delta in its Rockville, Maryland office to respond to telephone inquiries regarding passenger reservations on defendant Delta's airline

flights. In the course of her duties, plaintiff received a call on May 16, 1985 from a customer who requested passenger reservations on specific flights for her employer, Congressman Wyche Fowler. Later that day, the customer called Delta's offices to change the flights she had reserved and to express dissatisfaction with Pratt, because the flights she had requested were not all "non-stop" flights.

When a fellow employee of plaintiff's informed her of the customer's complaint, Pratt telephoned the customer and had a discussion with her. In the course of this call, plaintiff pushed an emergency button so that a recording system would make a tape of their conversation. Plaintiff's supervisor, Mike McCoy, noticed that the system had been activated and proceeded to monitor the call to determine whether it presented an emergency situation such as a bomb threat. McCoy briefly listened to the conversation and decided that there was no threat. He then walked over to plaintiff's station and asked her why she had pushed the emergency button. Plaintiff, whose employment history included a number of complaints for rudeness and efforts by Delta to improve her manner of dealing with customers, responded that she was trying to protect herself in the event that the customer accused her of being rude.

The customer then called Delta employee Scott Yohe to complain that plaintiff had indeed been rude to her on the occasion in question. Several days later, Gary Holt, Delta's reservations manager, called the customer to confirm her complaint that Pratt had been rude. On May 24, 1985, plaintiff was suspended from her employment. Following an investigation by Delta, plaintiff was discharged on June 4, 1985.

## II

### SUMMARY JUDGMENT PRINCIPLES

One of the purposes of Rule 56, F.R. Civ.P., is to require a plaintiff, in advance of trial and after a motion for summary judgment has been filed and supported, to come forward with some minimal facts to show that a defendant may be liable under the claims alleged. *See* Rule 56(e). Moreover, "a mere scintilla of evidence is not enough to create a fact issue, there must be evidence on which a jury might rely." *Seago v. North Carolina Theatres, Inc.*, 42 F.R.D. 627, 640 (E.D.N.C.1966), *aff'd*, 388 F.2d 987 (4th Cir.1967) quoted in *Barwick v. Celotex Corp.*, 736 F.2d 946, at 958–59 (4th Cir.1984). In the absence of such a minimal showing, a defendant should not be required to undergo the considerable expense of preparing for and participating in a trial. As Judge Winter said in *Bland v. Norfolk and Southern Railroad Company*, 406 F.2d 863, 866 (4th Cir.1969):

> While a day in court may be a constitutional necessity when there are disputed questions of fact, the function of a motion for summary judgment is to smoke out if there is any case, *i.e.*, any genuine dispute as to any material fact, and, if there is no case, to conserve judicial time and energy by avoiding an unnecessary trial and by providing a speedy and efficient summary disposition.

In two recent cases, the Supreme Court has had an opportunity to clarify and expand the principles applicable to a trial court's consideration of a summary judgment motion filed under Rule 56. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In *Anderson*, the Supreme Court held that the standard for granting a summary judgment motion under Rule 56 is the same as that for granting a directed verdict under Rule 50, F.R.Civ.P. 106 S.Ct. at 2511–12. The Court explained this standard as follows:

> [T]he judge must ask himself not whether he thinks the evidence unmistakeably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. *The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient;* there must be evidence on which the jury could reasonably find for the plaintiff.

*Id.* at 2512 (emphasis added).

In *Catrett*, the Court held that there is "no express or implied requirement in Rule

56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." 106 S.Ct. at 2553 (emphasis in original). In reaching this result, the Court observed:

> Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action." Fed.Rule.Civ.P. 1; see Schwarzer, Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact, 99 F.R.D. 465, 467 (1984).... Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.

*Id.* at 2555.

The Fourth Circuit recently discussed in *Felty v. Graves–Humphrey Co.*, 818 F.2d 1126 (4th Cir.1987), the Supreme Court's holdings in *Anderson* and *Catrett.* Judge Wilkinson emphasized in *Felty* that trial judges have "an affirmative obligation ... to prevent 'factually unsupported claims and defenses' from proceeding to trial." At 1128 (citing *Celotex, supra,* 106 S.Ct. at 2553).

Applying these principles to the facts of record here, this Court concludes that defendant's motion for summary judgment must be granted.

### III

### NEGLIGENCE

■ To establish a claim for negligence, plaintiff must show that a duty was owed, breach of the duty, proximate cause, and damages. *Jacques v. First National Bank of Maryland,* 307 Md. 527, 531, 515 A.2d 756 (1986). Plaintiff Pratt alleges that Delta was negligent because it had a duty to notify or warn her that calling back a dis-satisfied customer could lead to her being discharged and that it had a duty to take other disciplinary action before dismissing her. She contends that these duties arise from her employment contract and that defendant's breach of these duties was the proximate cause of her dismissal and resulting damages. Although plaintiff is apparently now disputing that she was an at-will employee under Maryland law, the parties agree that they are bound in contract by the terms of plaintiff's employment application.

Plaintiff first contends that Delta had a duty to issue written warnings, reprimands and temporary suspensions before discharging her. But no such duty existed under this particular contract of employment. Delta had a clear right under Pratt's employment contract to terminate her "at any time without notice ... and without any ... liability whatsoever." This provision would be rendered meaningless if Delta had a duty to take other disciplinary actions against Pratt before discharging her. This Court accordingly concludes that Delta had no duty under plaintiff's employment contract to give plaintiff warnings of the sort alleged before discharging her.

Furthermore, even if Delta had such a duty, the duty in question was not breached. It is undisputed that, prior to Delta's decision to fire her, Pratt was reprimanded and suspended for the manner in which she had acted in dealing with a congressman's secretary. Moreover, plaintiff had received several written reports and a suspension for previous incidents of misconduct involving Delta customers. This Court accordingly concludes that Delta did not owe or breach any duty to use other disciplinary procedures before it terminated plaintiff.

Plaintiff further argues that defendant had a duty to notify or warn her that she could be discharged for calling back a customer. But plaintiff was discharged for being rude and not for calling a customer back. In any event, besides explicitly providing that Pratt could be discharged at any time without notice, her contract states that her employment was for an "indefinite

period." In Maryland, an employment contract of indefinite duration is terminable at will, and an employment relationship of this sort can be terminated at the pleasure of either party, without cause, at any time. *Page v. Carolina Coach Co.,* 667 F.2d 1156, 1158 (4th Cir.1982); *Adler v. American Standard Corp.,* 291 Md. 31, 35, 432 A.2d 464 (1981). The employment relationship here could be terminated by defendant "at any time.... without liability." Since Delta could terminate Pratt for any reason at all or for no reason, it follows that Delta had no duty to inform Pratt of actions or omissions on her part which might lead to her termination. Such a duty would quite obviously be inconsistent with defendant's right to terminate Pratt's employment at any time.

Maryland law has recognized two exceptions to the rule that an at-will employee may be discharged without cause. *Castiglione v. Johns Hopkins Hospital,* 69 Md. App. 325, 338, 517 A.2d 786 (1986). First, an at-will employee may not be terminated if her discharge is contrary to a clear mandate of public policy. *Adler, supra,* 291 Md. at 47, 432 A.2d 464. Second, although an at-will employment contract is of indefinite duration, an employee may be discharged only for cause if such contract has been modified by a personnel policy statement that limits the employer's discretion to terminate an indefinite employment. *Staggs v. Blue Cross of Maryland, Inc.,* 61 Md.App. 381, 392, 486 A.2d 798, *cert. denied,* 303 Md. 295, 493 A.2d 349 (1985).

Plaintiff does not rely on either of these two exceptions to the Maryland rule in arguing that defendant was negligent. Rather plaintiff argues that Ohio law applies here and that under Ohio law her employment was terminable only for cause, pursuant to the holding in *Fairmont Creamery Co. v. Ewing,* 43 Ohio App. 191, 182 N.E. 883 (1932). Plaintiff contends that Ohio law applies because that is where she entered into her contract with Delta. The argument advanced in plaintiff's supplemental memorandum that Ohio law is applicable here is indeed a surprising one. Plaintiff's claim of abusive discharge, as discussed at pages 16–18 of her response to the pending motion for summary judgment, is based on Maryland law and in particular on the decision of the Court of Appeals of Maryland in *Adler v. American Standard Corporation, supra.*

In any event, even under Ohio law, plaintiff cannot prevail. In *Fairmont Creamery,* the court held that where an employment contract states that an employee could be terminated only for cause, the employer was required to have reasonable and justifiable cause to terminate him, even though the employment was for an indefinite period.

■ However, the contract of employment here did not state that Delta could terminate plaintiff only for cause. Plaintiff contends that, although her employment was of indefinite duration, she was terminable only for cause because of the following provisions in her contract:

"That I will be on a six months probationary period following my initial employment ... and that my continued or permanent employment beyond above-mentioned probationary period will be contingent upon completion of all employment requirements of whatever position I hereafter may hold to complete satisfaction of company;

That the Company reserves the right to terminate employment at any time if I have withheld, omitted, or falsified any material circumstances or information about the past or present state of my health;

That any falsification of facts in this application shall be *sufficient cause* for my immediate discharge without any notice or liability to me by Company, whenever such falsification or omission is discovered." **(emphasis by plaintiff).**

Plaintiff ignores another provision of the contract which states:

"That should I be given employment either in the position applied for or any other, now or hereafter, such employment shall be for an indefinite period and may be terminated at any time without notice or liability for wages or salary, except such earned at date of such termi-

nation, and without any other liability whatsoever * * *."

A fundamental rule of contract law is that the contract must be construed as a whole. Unlike the provision in the contract involved in *Fairmont, supra,* that the contract would "remain in effect until terminated by the company for cause," (*id.* 182 N.E. at 884), the provisions of the contract relied upon by plaintiff do no more than caution Delta employees to put truthful information in their job applications. The language in question did not limit Delta's right to dismiss its employees at will. As the contract provided, plaintiff's continued or permanent employment after her probationary period was contingent upon her completion of employment requirements to the complete satisfaction of Delta. Here, Delta determined (and the record supports such determination) that plaintiff had been rude to a customer. Because of a history of similar incidents, Delta discharged her. The contract here is not ambiguous. Delta's right to terminate an employee for putting false information in an employment application is in no way inconsistent with its right to terminate an employee for any other reason or for none at all.

For all these reasons, defendant is entitled to summary judgment as to plaintiff's claim based on a theory of negligence.

## IV

## DEFAMATION

■ As her next claim, plaintiff contends that Delta defamed her in her business reputation by characterizing her as "rude." In *Metromedia, Inc. v. Hillman,* 285 Md. 161, 400 A.2d 1117 (1979), the Court of Appeals of Maryland held that a plaintiff must prove the following elements in order to make out a claim for defamation:

(1) a false and defamatory communication

a—which the maker knows is false and knows that it defames the other, or

b—that the maker has acted in reckless disregard of these matters, or

c—that the maker has acted negligently in failing to ascertain them, and

(2) that the statement was one which appears on its face to be defamatory, as, e.g., a statement that one is a thief, or the explicit extrinsic facts and innuendo which make the statement defamatory, and

(3) allegations of damages with some particularity, since [*Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974)] and [*Jacron Sales Co. v. Sindorf,* 276 Md. 580, 350 A.2d 688 (1976)] forbid presumed damages.

*Metromedia, supra,* 285 Md. at 171, 400 A.2d 1117.

In addition, under Maryland law the defamatory communication must be publicized to a third party who reasonably understands the publication to be defamatory. *Embrey v. Holly,* 48 Md.App. 571, 580, 429 A.2d 251 (1981), *modified,* 293 Md. 128, 442 A.2d 966 (1982). Plaintiff Pratt contends that Delta published its statement that she was rude to the Maryland Department of Employment and Training during a hearing held before that administrative body in which plaintiff sought unemployment compensation. Her amended complaint also alleges publication of the statement to Delta's employees and to its personnel file on plaintiff.[1]

While Pratt's affidavit denies that she was rude to the customer, she fails to state any details concerning the conversation itself, or other specific facts which would show that the defendant's statement was untrue. In a defamation case where a defendant has moved for summary judgment, plaintiff cannot rely on a conclusory statement that the publication was false. *See Pilkenton v. Kingsport Publishing Corp.,* 270 F.Supp. 315, 317 (W.D.Va.1967), *aff'd,* 395 F.2d 989 (4th Cir.1968). Although plaintiff insists that the tape recording which she attempted to make would show that the conversation was friendly and that her immediate supervisor told her she had acted properly, there is no support in the

---

**1.** Plaintiff has withdrawn her claim that she was also defamed because after her discharge defendant refused to verify her employment with prospective employers.

record for this contention. The tape no longer exists. Moreover, the deposition of McCoy does not support plaintiff's claim. He indicates that he monitored the conversation for no more than fifteen seconds. He testified that he stopped listening after he determined that there was no emergency, and that he did not recall the substance of the conversation.

The record here fully supports Delta's determination that Pratt had been rude to a customer. At her administrative hearing, plaintiff conceded that she was angry when she called the Congressman's assistant. Even if Delta's determination were not established by the evidence, there is nothing in the record to indicate that defendant's statement was made with knowledge of its falsity, with reckless disregard of the truth or even negligently. It is undisputed that Congressman Fowler's assistant called Delta to complain that Pratt had been rude. Subsequently, a Delta representative contacted the Congressman's assistant, who confirmed her complaint and stated that Pratt had been "extremely rude." Plaintiff's employment file, which was reviewed by several levels of Delta's management, indicated that she had received four previous complaints and a prior suspension for being rude, and that Delta had cautioned her on several occasions to improve her conduct.

There can be little doubt that plaintiff was fired because she had been rude to a customer of Delta. When the examiner in plaintiff's unemployment compensation hearing asked Delta's representative why plaintiff had been fired, he answered that "she was terminated for rudeness to the customer." There is no evidence to the contrary in this record. Indeed, plaintiff does not contest the truth of defendant's reason for suspending and ultimately discharging her. Rather she challenges the truth of Delta's statement that she was

rude. Her arguments based on Delta's having made campaign contributions to Congressman Fowler are irrelevant to the question whether plaintiff was rude or, if she was not, whether defendant knowingly, recklessly or negligently disregarded this fact. Plaintiff has not met her burden here of showing that defendant's statement was false or that it was made by Delta with knowledge of its falsity.

■ In any event, even assuming that plaintiff in fact was not rude, this Court finds and concludes that defendant's statement is privileged. A qualified privilege attaches to communications made to the Maryland Department of Employment and Training, *Adler v. American Standard Corp.*, 538 F.Supp. 572, 577 (D.Md.1982) (citing Md.Ann.Code art. 95A § 12(g)(2)). A conditional privilege attaches to "in-house publications of defamatory expressions to facilitate ordinary personnel administration." [2] *Id.* (citing *Macy v. Trans-World Airlines*, 381 F.Supp. 142, 146 (D.Md.1974)). "These privileges may be overcome by proof of falsity and malice." *Id.* Malice is defined in relevant part as a "reckless disregard of truth." *Jacron Sales Co., supra*, 276 Md. at 599–600, 350 A.2d 688 (1976).

As previously discussed, plaintiff has failed to establish that Delta knowingly or recklessly published a false statement about her.[3] Moreover, there is nothing in this record to indicate that any other standard of malice should apply in this case, namely, unnecessarily abusive language or circumstances showing that defendant acted in an ill-tempered manner or with ill will. *Id.*

For all these reasons, plaintiff is not entitled to a recovery here under a theory of defamation.

---

**2.** The Court's discussion of the conditional privilege is addressed to plaintiff's claim that defendant published the defamatory statement to Delta employees and to its personnel file. Plaintiff, however, stated in her deposition that the only communication by Delta that she knew of was to the Maryland Department of Employment and Training.

**3.** Plaintiff does not argue that Delta was negligent in ascertaining the truth of its statement. A showing of negligence, however, would be insufficient to defeat these privileges. *See Jacron Sales Co. v. Sindorf*, 276 Md. 580, 597–600, 350 A.2d 688 (1976).

## V

### WRONGFUL DISMISSAL

■ For purposes of her abusive discharge claim, plaintiff concedes that she was an at-will employee and further concedes that Maryland law applies. She contends, however, that her discharge violates a clear mandate of public policy under *Adler, supra*, 291 Md. 31, 432 A.2d 464. She asserts that Delta wrongfully dismissed her in order to prevent her retirement benefits from vesting after ten years of service.

For the purposes of discussing this aspect of the case, it will be assumed that the protection of retirement benefits afforded by the federal Employment Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001–1461, ("ERISA") is a clear mandate of the public policy of Maryland. In *Adler v. American Standard Corp.*, 538 F.Supp. 572 (D.Md.1982), this Court, after certifying questions of law to the Maryland Court of Appeals, held that a violation of federal law may form the basis for a claim of wrongful discharge. *Id.* at 578. However, although there was no preemption issue in *Adler*, this case squarely presents the question whether the federal statute and its procedures are the sole means of redress.

Section 514(a) of ERISA, 29 U.S.C. § 1144(a), preempts "any and all State laws insofar as they may now or hereinafter *relate to* any employee benefit plan." (emphasis added). The statute defines "State law" as including "all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." 29 U.S.C. § 1144(c)(1). In *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983), the Supreme Court defined the broad scope of the statute's preemptive provision by stating:

A law "relates to" an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan.

*Id.* at 96–97, 103 S.Ct. at 2900. The preemption clause moreover is not limited to "State laws specifically designed to affect employee benefit plans." *Id.* at 98, 103 S.Ct. at 2900.

This Court holds that Pratt's abusive discharge claim asserted herein under Maryland law is preempted by ERISA. It is clear that the basis for her claim—that Delta wrongfully terminated her so as to prevent her benefits under its retirement plan from vesting—"relates to" an employee benefit plan. *See Kelly v. International Business Machines Corp.*, 573 F.Supp. 366, 370–371 (E.D.Pa.1983), *aff'd*, 746 F.2d 1467 (3rd Cir.1984). ERISA specifically provides a remedy for this type of wrong. Id. 29 U.S.C. § 1140.

In *Borowski v. Vitro Corp.*, 634 F.Supp. 252 (D.Md.1986), Judge Motz, sitting for this Court, stated in dictum that ERISA supercedes state law to the extent plaintiffs seek vestiture in a pension plan or similar relief, but "the fact that a portion of the relief ... request[ed] might involve matters preempted by ERISA does not mean that [state] causes of action are preempted in their entirety. Unlawful conduct may have diverse consequences which are remedial in diverse ways." *Id.* at 258. Plaintiff relies heavily on this statement in arguing that her claim is not preempted because she is not suing merely for vestiture of retirement benefits, but is here seeking relief for emotional distress, mental anguish, and punitive damages.

Plaintiff's reliance on *Borowski* is misplaced. Judge Motz did not in *Borowski* reach the question whether the state claims asserted there were actually preempted. Instead, he dismissed those claims for insufficient pleading. *Id.* More importantly, *Borowski* was decided prior to *Pilot Life Insurance Co. v. Dedeaux*, — U.S. —, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), wherein the Supreme Court emphasized the "expansive sweep of the preemption clause." *Id.* at —, 107 S.Ct. at 1553. In *Pilot Life*, the plaintiff asserted various state tort and contract claims, and sought damages for mental and emotional distress and punitive damages for the improper processing of a claim under an employee benefit plan. In holding that the plaintiff's causes of action were expressly preempted, the

Court said that "the policy choices reflected in the inclusion of certain remedies and the exclusion of others ... would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA." *Id.* at ——, 107 S.Ct. at 1556.

As in *Pilot Life*, this Court concludes in this case that plaintiff's cause of action does not fall under any of the narrow exceptions to preemption that Congress provided, namely, laws regulating insurance, banking, or securities. 29 U.S.C. § 1144(b)(2)(A). Nor is plaintiff's claim covered by the statute's exemption for generally applicable criminal laws. 29 U.S.C. § 1144(b)(4). Accordingly, plaintiff's claim for abusive discharge is expressly preempted by ERISA. The preemption of her claim by federal law is controlling and prohibits plaintiff from relying on any public policy in Maryland regarding the protection of employee benefits.

For all these reasons, the motion for summary judgment of defendant Delta Air Lines must be granted. An appropriate order will be entered.