**Gerald F. ADLER, Plaintiff,**

v.

**AMERICAN STANDARD CORP., Defendant.**

**Civ. No. H–79–1783.**

United States District Court, D. Maryland.

March 19, 1982.

J. Owen Zurhellen, III, New York City, and Stephen D. Langhoff, Baltimore, Md., for plaintiff.

H. Thomas Howell, Sidney G. Leech, Anthony W. Kraus and Semmes, Bowen & Semmes, Baltimore, Md., for defendant.

## MEMORANDUM DECISION

ALEXANDER HARVEY, II, District Judge:

Presently pending before the Court in this civil action is defendant's motion to dismiss all Counts of the second amended complaint. The Court has considered the voluminous memoranda filed by both sides, and oral argument has been heard in open court. For the reasons set forth hereinafter, the motion to dismiss will be denied as to three of the Counts and granted as to one of the Counts.

The parties are thoroughly familiar with the relevant facts, and the Court will not recount them here in any detail. They are summarized in the opinion of the Court of Appeals of Maryland in this very case.

*Adler v. American Standard Corp.*, 291 Md. 31, 32–3, 432 A.2d 464 (1981). However, I will briefly review the history of the case to this point in time. Suit was filed in the Southern District of New York in March 1979. The first version of the complaint contained four Counts: defamation, abusive discharge, breach of contract and prima facie tort. Shortly thereafter, defendant moved successfully for transfer of the suit to this District under 28 U.S.C. § 1404(a). 478 F.Supp. 8. The case was assigned to the late Judge C. Stanley Blair of this Court. While the case was before Judge Blair, defendant moved for judgment on the pleadings or for summary judgment. However, Judge Blair's untimely death prevented his ruling on that motion. The case was then reassigned to me in June of 1980. Leave was granted to plaintiff to file an amended complaint, which was in fact filed in June of 1980. The amended complaint contained four Counts, also. However, the tort Count had been replaced by one of fraud, and certain publications were for the first time alleged in the defamation Count. Defendant again filed a motion to dismiss the amended complaint. The issues were briefed and a hearing was held before me.

Concluding that Maryland law would be controlling in this case, I referred the question of whether Maryland would recognize a claim for abusive discharge to the Court of Appeals of Maryland. No rulings were made on the other issues, but two questions were posed to the Court of Appeals of Maryland.

(1) Is a cause of action for "abusive discharge" recognized under the substantive law of the State of Maryland?

(2) Do the allegations of the amended complaint, if taken as true, state a cause of action for "abusive discharge" under the substantive law of the State of Maryland?

The Maryland Court of Appeals answered the first question in the affirmative, and the second one in the negative. The elements of a claim of abusive discharge were summarized as follows:

> * * * Maryland does recognize a cause of action for abusive discharge by an employer of an at-will employee when the motivation for the discharge contravenes some clear mandate of public policy * * * 291 Md. at 47, 432 A.2d 464.

However, the amended complaint was held not to state a cause of action because plaintiff had failed to articulate a sufficiently clear mandate of public policy.

Thereafter, this Court granted plaintiff leave to file a second amended complaint, which he did on September 9, 1981. The second amended complaint is identical with the amended complaint in all respects except that plaintiff has now enumerated a number of federal and state statutes claimed to have been violated by defendant's agents. These are alleged to be instances of the clear mandate of public policy, the contravention of which was allegedly the motivation for plaintiff's discharge. Once again, defendant has filed a motion to dismiss, this time directed at the second amended complaint. There has been further briefing, and previous memoranda have been incorporated by reference.

At the outset, it must be emphasized that solely a motion to dismiss is before the Court. In weighing the issues presented, the test is the same. A "complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). Thus, the presence of allegations which would support a claim for relief will enable a Count to survive this motion to dismiss even though questions might arise as to whether facts substantiating the allegations of that particular Count could ever be proved, and even though there may be present in the Count material which might be stricken if subject to a motion to strike.

I

*Defamation*

In the second amended complaint, plaintiff alleges that a letter of October 12, 1978, signed by James R. Kenealy (hereinafter

"Kenealy") and James L. Sinclair (hereinafter "Sinclair") and addressed to plaintiff, stated, regarding his discharge, that: "This termination is for unsatisfactory performance." Plaintiff further alleges that the letter was published to superior managerial personnel of defendant and to the Maryland Employment Security Administration. Finally, oral statements "to the same effect" were also published to the same audiences. Plaintiff alleges that these statements were not true and were maliciously and recklessly made, to his detriment.

■ As a preliminary objection, defendant contends that the allegations that defamatory remarks were made to the Maryland Employment Security Administration are time-barred. This Court would disagree. Maryland follows the so-called "discovery rule" in defamation cases. *Sears, Roebuck and Co. v. Ulman*, 287 Md. 397, 412 A.2d 1240 (1980). Under this rule, limitations do not begin to run until the plaintiff discovers, or by exercise of reasonable diligence should discover, the wrong of which he complains. Defendant may challenge, if he wishes, the truth of plaintiff's representations, or impeach plaintiff's diligence in uncovering publication, but these are not matters for a motion to dismiss. Under the Maryland discovery rule, this Court cannot assume that the complaints as to publication are time-barred. This disposition of the issue obviates any need to consider defendant's arguments regarding the "relation-back" doctrine under Rule 15(c), F.R.Civ.P.

■ Defendant next contends that the defamation Count should be dismissed because the allegations regarding the oral statements to superior officers of defendant and to Maryland Unemployment Compensation officials do not reproduce the exact words alleged to have been defamatory. But there is no such requirement in the Federal Rules of Civil Procedure, and this Court will impose none such in this case. *See* 5 Wright & Miller, *Federal Practice and Procedure* § 1245 (1969 and 1981 Supp.). Defendant has been fairly put on notice concerning the alleged defamatory statements and can pursue the matter further in discovery.

Defendant next argues that the assertion that plaintiff had been terminated for "unsatisfactory performance" is not "capable of bearing a meaning that is defamatory," because it is an expression of opinion rather than of fact, and because the concept of "unsatisfactory performance" is too vague to be susceptible of proof of truth or falsehood. Since defamation is premised on statements of fact which are untrue, defendant urges that such statements cannot be defamatory.

■ It is correct that expression of a pure opinion cannot be the basis of a defamation action. But there is a distinction between simple opinions and expressions of opinion which indicate that they are based on undisclosed facts. As to the latter, "if the recipient draws the reasonable conclusion that the derogatory opinion expressed in the comment must have been based on undisclosed defamatory facts, the defendant is subject to liability." 3 Restatement (Second) of Torts, § 566, Comment (c) at 173 (1977). This distinction has been followed in a case factually similar to this one, arising in the Eastern District of Pennsylvania, *Hoover v. Peerless Publications*, 461 F.Supp. 1206 (E.D.Pa.1978). Moreover, I am satisfied from the recent case of *Nistico v. Mosler Co.*, 43 Md.App. 361, 405 A.2d 340 (1979), that Maryland would recognize and apply this distinction, particularly when the question has been raised under a motion to dismiss.

The Restatement distinction also disposes of defendant's objection on grounds of vagueness. The reasonable implication from the allegedly defamatory statements is that plaintiff was guilty of some misconduct, negligence or incompetence in the performance of his duties.

■ Defendant further maintains that even if plaintiff is held to have stated in timely fashion the elements of a defamation claim, Count One should still be dismissed because the alleged defamatory remarks were privileged, if and when made. But

the privilege here was either a conditional privilege, attaching to in-house publications of defamatory expressions to facilitate ordinary personnel administration, *see Macy v. Trans-World Airlines,* 381 F.Supp. 142, 146 (D.Md.1974), or a qualified privilege, attaching to statements made to the Maryland Unemployment Security Administration. *See* § 12(g)(2), Article 95A, Md.Ann.Code. These privileges may be overcome by proof of falsity and malice. I am satisfied that the second amended complaint sufficiently alleges falsity and malice. Conclusory allegations of malice are sufficient under Rule 9(b), F.R.Civ.P.

■ Finally, defendant argues that the knowledge of plaintiff's satisfactory performance, supported by Paragraph 14 of the second amended complaint and necessary to support the allegations of the requisite malice, is undercut by the allegation in Paragraph 36 that "in fact, defendant harbored significant reservations respecting plaintiff's performance." But Rule 8(e) authorizes hypothetical, alternative and inconsistent pleadings. *See* 2A Moore, *Federal Practice,* ¶ 8.32 at 8–292 to 293 (1981). Consequently, the inconsistent facts alleged in the second amended complaint do not subvert the adequate pleading of malice.

So, for all these reasons, this Court concludes that the second amended complaint adequately states a cause of action under Maryland law for defamation.

## II

### *Abusive Discharge*

The changes and additions which distinguish the second amended complaint from its predecessor are all attempts by plaintiff to make clear the ways in which the motivation for plaintiff's discharge violated Maryland's public policy, pursuant to the requirements of Maryland law as articulated by the Maryland Court of Appeals in its opinion in this very same case. As the claim of abusive discharge is now stated, plaintiff alleges, *inter alia,* that while employed by defendant, and especially while serving as president of two of defendant's subsidiaries, Twin Cities Press and Stern-Majestic, he discovered that Stern-Majestic had been paying bribes to officers of defendant's customers, Voss-White and Franklin Mint. He alleges that he was further informed that, after an officer of Franklin Mint had been indicted, an employee of Stern-Majestic had been directed to alter Stern-Majestic's records to prevent disclosure of bribes paid. Plaintiff asserts that he ordered the cessation of commercial relations between Stern-Majestic and Voss-White and Franklin Mint, but that he was overruled by Kenealy.

The second amended complaint also recounts how plaintiff was informed of various improprieties involving another subsidiary of defendant, Lithos Formas, the executives of which had allegedly bribed Mexican officials to facilitate transfers of funds within defendant so that neither United States nor Mexican taxes were paid. In order to escape or forestall investigation, it is alleged, defendant donated Lithos Formas to a Mexican university, while retaining control of its business through a management services contract.

The second amended complaint also recounts information that plaintiff claims to have received during his employment, to the effect that an officer of another customer of defendant, the MGM Grand Hotel in Las Vegas, Nevada, received plumbing fixtures gratis in consideration of channeling business to defendant. Plaintiff further alleges that Kenealy unsuccessfully tried to order plaintiff to claim as ordinary expenses certain capital expenditures required to rebuild the physical plant of Twin Cities Press which had been destroyed in a fire; that Kenealy had ordered the postdating of a sale from fiscal 1976 to fiscal 1977 to decrease tax liability; and that defendant had written off $100,000 worth of paper goods in 1975, which were actually used over the next three years without proper tax reporting adjustments, of which Kenealy was aware.

Plaintiff cites a number of statutes which this and other conduct would violate, if proved. The bribery of the officials of

Voss-White, Franklin Mint and the MGM Grand Hotel, plaintiff alleges, violates the federal Sherman Act, the Clayton Act (as amended by the Robinson-Patman Act) and the Federal Trade Commission Act, as well as the Maryland antitrust laws. This conduct is also alleged to have violated various federal tax statutes, 26 U.S.C. §§ 6041, 7201 and 7203, as well as Maryland tax statutes, Article 81, Maryland Annotated Code, §§ 298, 302(a) and 304. The alteration of documents to frustrate an investigation of the Franklin Mint briberies, it is alleged, violates 26 U.S.C. § 7212 and 18 U.S.C. § 1510. The falsification of documents to escape tax liability would violate 26 U.S.C. §§ 7201 and 7206, as well as Article 81, §§ 279 *et seq.*, Maryland Annotated Code. The bribery of Mexican officials is claimed to violate the Foreign Corrupt Practices Act, 15 U.S.C. §§ 78dd–1 and 78dd–2. The related fraud on the United States Treasury is asserted to be a violation of 26 U.S.C. §§ 7201 and 7206.

Plaintiff further alleges that there was to have been a meeting on October 13, 1978 with a representative of defendant's New York headquarters, that plaintiff informed Kenealy and Sinclair that he planned to make use of the occasion to expose many of the questionable practices of which he had become aware, that Kenealy and Sinclair then and for that reason terminated plaintiff, that their stated reason for firing plaintiff was specious, and that their real motivation in firing plaintiff was to cover up their misdeeds and those of the defendant.

■ After due consideration of these and other allegations contained in the second amended complaint, I am satisfied that Count Two (the abusive discharge Count) now satisfies the legal requirements for going forward on such a claim in Maryland. A clear mandate of public policy was allegedly contravened by this discharge. The second amended complaint now recites with the requisite degree of specificity the manner in which certain statutes were offended so as to constitute a violation of the public policy of this State.

Defendant has first moved for dismissal of this Count on the ground that plaintiff should not be allowed to adduce novel grounds of public policy after the certification process is complete. This objection is without merit. All that plaintiff has done is to increase the particularity with which he has alleged facts already generally stated, including the enumeration of those statutes which, on the basis of those facts, defendant's agents have allegedly violated. This does no more than respond to the clear invitation of the Maryland Court of Appeals. *See* 291 Md. at 46, 432 A.2d 464. Obviously, the plaintiff could not have done this before the opinion of the Court of Appeals was rendered and before the new state cause of action was recognized.

■ Next, there is no merit to defendant's arguments that plaintiff may not rely on federal law as the source of the public policy contravened by plaintiff's discharge. There is no preemption question in a case such as this one. The civil law remedy in Maryland for an abusive discharge does not seek to enforce federal law nor to regulate activities thereunder; it does seek to foster and promote the policy of that law. This does not offend federal sovereignty, nor the Federal Constitution, nor does it have extraterritorial effect. State courts are regularly presented with questions of federal law and federal policy, and state courts are fully capable of deciding questions of this sort. *See Maine v. Thiboutot*, 448 U.S. 1, 10–11, 100 S.Ct. 2502, 2507, 65 L.Ed.2d 555 (1980). Just as pendent state claims may be brought in federal court if there is jurisdiction, a federal claim may be presented to and decided by a state court. *See Martinez v. California*, 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980), holding that § 1983 actions may be brought initially in state courts.

■ It is absurd to suggest that there would be any *res judicata* effect of any ultimate decision that federal public policy was violated by this discharge. If plaintiff recovers, there would be no binding determination of a violation of a federal statute, nor any enforcement of same. It is in no

way offensive to state sovereignty to engraft federal public policy within the civil law. If defendant's arguments were to be adopted, this Court would accept the proposition that the State of Maryland, as a matter of public policy of its own, should not be concerned with serious violations of federal law resulting from acts of bribery. Federal and state officials regularly cooperate in the enforcement of the laws of the other sovereignty. This Court cannot agree that the State of Maryland should close its eyes and, as a matter of policy, not be concerned with violations of federal law. As the Tenth Circuit said in *Lachman v. Sperry-Sun Well Surveying Co.*, 457 F.2d 850, 853 (10th Cir. 1972), it is public policy "everywhere" to encourage the disclosure of criminal activity. This passage was quoted with approval by a state court in Texas in *The Goodyear Tire & Rubber Co. v. Sanford*, 540 S.W.2d 478, 484 (Tex.Civ. App.1976).

Various courts have recognized that federal public policy may properly form the basis for an abusive discharge suit in a state court. *See McNulty v. Borden, Inc.*, 474 F.Supp. 1111 (E.D.Pa.1979); *Tameny v. Atlantic Richfield Co.*, 27 Cal.3d 167, 164 Cal. Rptr. 839, 610 P.2d 1330 (1980); *Harless v. First National Bank*, 246 S.E.2d 270 (W.Va. 1978); *see also Pugh v. See's Candies, Inc.*, 116 Cal.App.3d 311, 171 Cal.Rptr. 917 (1981). No cases have been cited to the Court holding to the contrary.

■ Equally specious are defendant's arguments that the due process clause of the Fifth Amendment or the Commerce Clause of the Constitution will be violated if the abusive discharge claim is permitted to stand and that this civil claim in this Court would amount to a private remedy for the violation of federal law. There is no extra-territorial effect violative of the Federal Constitution if plaintiff finally recovers because he has been discharged in violation of a public policy exemplified by federal law but accepted by Maryland law. The remedy here is not a private one to enforce federal law. This is a cause of action under state law.

■ We come now to the sufficiency of the allegations themselves. Defendant argues that allegations of a discharge because of mere threats of disclosure of violations of public policy are not sufficient. This Court would disagree. Actual disclosure need not be alleged and proved. Allegations of threats are sufficient. *See McNulty v. Borden, Inc., supra* at page 1119.

■ Defendant has also argued that plaintiff has failed to allege successfully that the actions of defendant's agents violated the policy of the enumerated laws. In considering this point, the Court will restrict itself to inquiring whether the conduct plaintiff claims that he threatened to expose would have violated any one of the laws referred to. Clearly, a violation of the law is a violation of the policy of the law, and a discharge to cover up such a policy violation is itself a policy violation. *See Adler,* 291 Md. at 43, 432 A.2d 464. It is therefore not necessary to consider in detail every factual allegation or law cited. A single successful allegation that the conduct of defendant's agents which plaintiff threatened to reveal was violative of the law would suffice to defeat defendant's motion to dismiss at this stage of the case. With reference to the pending motion, the Court will consider only the tax law aspects of the briberies alleged.

The payments to executives and officials of the Franklin Mint and Voss-White, of the Mexican Government, and of the MGM Grand Hotel by agents of the defendant are alleged to have violated various tax statutes. On the federal level, they are said to violate 26 U.S.C. §§ 7201, 7203, 7206 and 6041. Although bribery is not explicitly or implicitly forbidden by any of these statutes, their cumulative effect is clearly to direct businesses and individuals to keep records supporting their federal income tax returns, to file the returns, to make them accurate and not to attempt to evade or defeat federal taxes. The very nature of a bribe paid by a corporation for business purposes demands that one or another of these provisions be violated, particularly the record-keeping and return-filing of the par-

ty accepting the bribe. For obvious reasons, that party is likely not to report such income, thereby violating various provisions of the federal tax laws. Meanwhile, the other party, who pays the bribe, will contravene similar requirements of the law by not accurately reporting the payment of a bribe. In short, the interlocking and pervasive requirements of business taxation and record-keeping indicate that, when bribes of the sort alleged are paid, violations of the above-mentioned federal statutes will result. And since Maryland tax law and Maryland tax returns are based, in large part, on federal tax law and federal tax returns, Maryland is directly affected if federal taxes are evaded.

■ In summary then, plaintiff has alleged, with sufficient particularity, that he threatened the exposure of defendant's violations of federal tax laws, that he was fired as a result and that the tendency of such firing was to prevent the disclosure of these violations in contravention of a clear federal policy which is incorporated as public policy by the State of Maryland. These allegations state a proper cause of action under Maryland law for a recovery based on an alleged abusive discharge. Since these particular allegations are sufficient, it is not necessary to consider whether plaintiff may also rely, in support of his claims, on alleged violations of federal and state antitrust law, on alleged violations of federal laws forbidding the obstruction of an investigation and on alleged violations of the Federal Corrupt Practices Act.

For the reasons stated, the motion to dismiss this abusive discharge Count will be denied.

### III

#### Punitive Damages

■ Defendant has urged that, if the Court allows the claim of abusive discharge to proceed, it should strike the related claim for punitive damages. Citing *Nees v. Hocks*, 272 Or. 210, 536 P.2d 512 (1975) and *Kelsay v. Motorola, Inc.*, 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353, 360 (1978), defendant argues that it would be unfair to impose punitive damages in the same case

where the underlying tort is for the first time recognized. But this question cannot be determined on this motion to dismiss. Plaintiff has alleged malice, and whether or not the cause of action for abusive discharge existed in Maryland when plaintiff was discharged, there are facts which could conceivably be proved which would still permit the recovery of punitive damages. *See Philadelphia, Washington and Baltimore Railroad Co. v. Larkin*, 47 Md. 155 (1877). Whether or not punitive damages can be recovered in this case then will depend on the facts.

Accordingly, the punitive damages claim will not be stricken at this stage of the case.

### IV

#### Fraud

■ In his third Count alleging fraud, plaintiff asserts that defendant frequently assured him that his work was satisfactory with the intention that he should rely on these assurances and remain in defendant's employ; that plaintiff did rely on them, rejecting actual offers of employment elsewhere; that defendant was actually dissatisfied with plaintiff at the time it offered plaintiff the assurances, and that plaintiff was damaged by his refusal of other employment and his continuation in defendant's employ.

In Maryland, there are five essential elements of fraud: "(1) That a representation made by the respondent was false; (2) that its falsity was known to him; (3) that the misrepresentation was made for the purpose of defrauding the plaintiff; (4) that the plaintiff not only relied upon this misrepresentation, but had the right to do so and would not have done the thing from which the damage resulted if it had not been made; and (5) that the plaintiff suffered damage directly resulting from the respondent's misrepresentation." *See James v. Weisheit*, 279 Md. 41, 44, 367 A.2d 482 (1977); *Wedeman v. City Chevrolet Co.*, 278 Md. 524, 532, 366 A.2d 7 (1976).

Although it is extremely doubtful that the facts here would permit this claim of fraud to be successful, this Count cannot now be dismissed on the pleadings alone.

Plaintiff has alleged each of the five requirements. I would doubt that plaintiff would ever be able to prove fraud in this particular employment situation because this was an employment contract of indefinite duration, which under Maryland law could be legally terminated at the pleasure of either party at any time, subject only to exceptions for a discharge based on discrimination, abusive discharge or the like. Fraud in Maryland must be proved by clear and convincing evidence. It would appear that the alleged misrepresentation here was merely one of opinion and that plaintiff could hardly have relied on it to his detriment, since this was an employment at will.

Nevertheless, the elements of the cause of action have been properly alleged and these allegations are sufficient to withstand a motion to dismiss. It cannot now be said that plaintiff could prove no set of facts which would entitle him to relief under a claim of fraud. After the facts have been developed by discovery, the viability of the fraud Count can, if desired, be considered again pursuant to a motion for partial summary judgment.

### V

*Breach of Contract and Estoppel*

■ The fourth Count alleges that, feeling insecure about the effects his conflicts with Kenealy might have on his career with defendant, plaintiff sought assurance from Sinclair and another employee of defendant named Kayser that his job security would be protected; that he received such assurances; that plaintiff relied upon these assurances by staying in defendant's employ and rejecting actual employment opportunities elsewhere, and that he was nonetheless discharged because of his conflicts with Kenealy.

These allegations are insufficient for a recovery as a matter of law in Maryland where an employment at will, such as this one, is involved. As noted, under Maryland law, an employment contract of indefinite duration is an employment at will and can be terminated without cause by either party. *See Adler*, 291 Md. at 35, 432 A.2d 464. This is a very far-reaching rule in Mary-

land, and attempts to circumvent it by relying on estoppel or similar theories have consistently met with failure.

■ Plaintiff here relies on allegations that he relinquished other and more lucrative employment and that a binding contract thereby resulted. Maryland law, however, rejects the proposition that mere relinquishment of alternative employment is adequate consideration to modify a contract for at will employment and would give an employee greater rights under the contract. *See* the very recent case of *Page v. Carolina Coach Co.*, 667 F.2d 1156, 1158 (4th Cir. 1982), interpreting Maryland law. Maryland law makes it clear that an employee may not sue under a breach of contract theory where the employment is at will. He may, of course, claim abusive discharge as he has done here, but he may not seek a remedy based on breach of contract or estoppel.

Accordingly, the contract Count will be dismissed.

For all these reasons, the motion to dismiss will be granted in part and denied in part. The motion will be denied as to Counts One, Two and Three and granted as to Count Four.