Sandra L. MILLER, Samuel I. Reid, and Charles J. Baish, Plaintiffs,

v.

FAIRCHILD INDUSTRIES, INC., and Edward J. Uhl, Defendants.

Civ. No. Y–86–3028.

United States District Court, D. Maryland.

Aug. 5, 1987.

Melvin M. Belli, Sr., San Francisco, Cal., R. Martin Palmer, Jr., Hagerstown, Md., and Richard E. Schwartz, St. Louis, Mo., for plaintiffs.

Barry Bach, Stephen R. Lohman, and Craig F. Ballew, Baltimore, Md., for defendants.

## MEMORANDUM

JOSEPH H. YOUNG, District Judge.

Plaintiffs Sandra L. Miller, Samuel I. Reid, and Charles J. Baish were employed at the Fairchild Industries plant in Hagerstown, Maryland. They filed this suit in the Circuit Court of Washington County against defendants Fairchild and Edward G. Uhl, Fairchild's chairman and chief executive officer. Defendants removed the case to this Court and simultaneously filed a motion to dismiss, arguing that plaintiffs' claims arose under collective bargaining agreements [1] and were preempted by feder-

---

1. Fairchild's Hagerstown employees were represented by the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW) Amalgamated Local Number 842.

al law. Plaintiffs then moved to amend their complaint and for remand. Defendants oppose both motions, arguing that the amended complaint contains totally new causes of action and is an attempt to avoid federal jurisdiction and preemption under § 301 of the Labor Management Relations Act.

## I. *The Motion to Amend*

### A. *The Original and Amended Complaints*

■ Both the original and amended complaints generally allege the same facts: that Fairchild publicly promised job security to its employees even as it privately planned to shut down the Hagerstown plant, that it subsequently lost contracts it could have secured for additional work, and that Fairchild was convicted of toxic waste dumping charges and fined $100,000.

The original complaint contains four counts. Counts I and II are related causes of action: Count I alleges intentional misrepresentation of fact while Count II alleges intentional suppression of fact. Specifically, the plaintiffs assert that Fairchild and Uhl assured Fairchild employees that their jobs were secure while failing to disclose Fairchild's plans to close the plant. Count III alleges negligent misrepresentation of fact on the same grounds. Count IV alleges breach of contract, asserting that the alleged misrepresentations about job security and created an "express and/or implied in-fact" promise not to lay off the plaintiffs.

The amended complaint contains six counts. Count I again alleges intentional misrepresentation of facts, but asserts that Fairchild's decision to close the Hagerstown plant resulted from the defendants' "antisocial economic interest" and was made "with intent to denigrate and disparage the environmental protection laws of the State of Maryland...." The plaintiffs contend that Fairchild and Uhl decided to shift production from the Hagerstown plant to other locations where enforcement of toxic waste regulations would be less stringent and that the decision was made "for the purpose of retaliation against the toxic-waste dumping indictment and convictions." Counts II and III in essence reassert the intentional and negligent misrepresentation claims stated in the original complaint.

Counts IV, V, and VI are new claims. Count IV alleges "Retaliatory Discharge in Violation of Maryland Public Policy," and asserts that Fairchild's decision to close the Hagerstown plant "was made for the purposes of thwarting the State of Maryland and the County of Washington from vigorously enforcing their environmental protection laws against the dumping . of toxic wastes and, further, to damage plaintiffs and their surrounding community, as well as the local city, county, and school boards, for their political behavior in violation of the Maryland Constitution, Labor Code, and public policy." Count V alleges prima facie tort, and Count VI restyles the original complaint's breach of contract count into a tortious interference with contract count.

Rule 15, Fed.R.Civ.Pro., provides that leave to amend a complaint shall be freely given when justice so requires. Therefore this Court will grant plaintiffs' motion to amend the complaint and consider defendants' objection as a motion to dismiss.[2]

### B. *Relation Back of the Amended Complaint*

■ Rule 15(c) also provides that when the claim asserted in the amended complaint arose out of the conduct, transaction, or occurrence set forth in the original complaint, it relates back to the date of the original complaint. Plaintiffs' new claims

---

**2.** Defendants have objected to the amended complaint for the same reason they have filed their motion to dismiss: they argue that plaintiffs' claims arise from collective bargaining agreements and are barred by their failure to exhaust applicable grievance procedures. When a proposed amendment is objected to on grounds of legal insufficiency, a court should treat the objection as a motion to dismiss under Rule 12(b)(6), Fed.R.Civ.Pro. Moore, Federal Practice and Procedure, 15.08[4] at 15–81–82. Therefore, defendants' objection to the motion to amend will be considered as a motion to dismiss the amended complaint.

must therefore be examined to determine whether they relate back to the original complaint and are thus within the statute of limitations.

The Fourth Circuit has held that the Rule 15(c) analysis requires two inquiries. First, the court should determine whether a factual nexus exists between the original and amended complaints. Second, if a factual nexus exists, courts should decide whether the defendant had notice of the claim and thus will not be prejudiced by the amendment. *Grattan v. Burnett,* 710 F.2d 160, 163 (4th Cir.1983), *affirmed* 468 U.S. 42, 104 S.Ct. 2924, 82 L.Ed.2d 36 (1984).

Here, there is a substantial factual nexus between the original and amended complaints. Both are based on the decision to shut down the Hagerstown plant and the representations Fairchild and Uhl are said to have made about job security. The amended complaint essentially restates the original complaint's factual allegations but also claims that the plant closing was retaliatory.

Defendants also clearly had notice of the claims in counts I, II, III, and VI of the amended complaint. The first three counts are essentially the same in both complaints, and Count VI simply restyles the original complaint's breach of contract claim as tortious interference with contract.

Counts IV and V, which allege retaliatory discharge in violation of Maryland public policy and *prima facie* tort, require closer scrutiny because they are entirely new causes of action. However, they were presaged by factual allegations in the original complaint. For example, that complaint asserted that in 1981 Fairchild had been indicted for violating toxic waste laws and ultimately convicted of five charges and fined $100,000. It also asserted that Fairchild's decision to shut down the Hagerstown plant was "a retaliatory discharge made for illegal motives and purposes." These factual allegations put the defendants on notice of plaintiffs' contention that the decision to shut down the plant was itself tortious and related to the toxic waste convictions. Moreover, "even a new cause of action may relate back if the defendant's conduct, relied on to support the original complaint, is factually similar to the defendant's conduct relied on to support the amended complaint." *Hooper v. Sachs,* 618 F.Supp. 963, 977 (D.Md.1985). The new causes of action are based on the same conduct—the decision to close the Hagerstown plant and the alleged misrepresentations about that decision—as the causes of action in the original complaint. Accordingly, under *Hooper,* they relate back to the filing of the first complaint.

## II. *The Motion to Remand*

Plaintiffs have moved for remand back to the state court, contending that the claims in the amended complaint do not arise from the collective bargaining agreements. Defendants, of course, argue that the claims do arise from the collective bargaining agreements. Again, these arguments will be considered and analyzed by this Court in ruling on the motion to dismiss.

## III. *The Motion to Dismiss*

Defendants contend that all of the plaintiffs' claims arise under collective bargaining agreements and are thus preempted by § 301 of the Labor Management Relations Act. Section 301 states:

"Suits for violations of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... may be brought in any district court of the United States having jurisdiction of the parties."

29 U.S.C. § 185(a). The Supreme Court has held that § 301 expresses a federal policy that the substantive law to be applied in § 301 cases is "federal law, which the courts must fashion from the policy of our national labor laws." *Textile Workers v. Lincoln Mills,* 353 U.S. 448, 456, 77 S.Ct. 912, 918, 1 L.Ed.2d 972 (1957). Therefore, the Court has held, § 301 preempts state law contract actions. The Court later extended § 301 preemption to tort actions that would require interpretation of the terms of a collective bargaining agreement, concluding that

"questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort."

*Allis-Chalmers v. Lueck,* 471 U.S. 202, 211, 105 S.Ct. 1904, 1911, 85 L.Ed.2d 206 (1985). In deciding whether state law tort actions, like those brought by the plaintiffs here, are preempted by federal law, courts should determine whether the tort action "confers nonnegotiable state-law rights on employers or employees independent of any right established by contract, or, instead, whether evaluation of the tort claims in inextricably intertwined with consideration of the terms of the labor contract." *Id.* at 213, 105 S.Ct. at 1912.

However, the Court emphasized the narrowness of its decision. It noted that it was not ruling that

"every state-law suit asserting a right that relates in some way to a provision in a collective-bargaining agreement, or more generally to the parties to such an agreement, necessarily is preempted by § 301. The full scope of the preemptive effect of federal labor-contract law remains to be fleshed out on a case-by-case basis. We do hold that when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim ... or dismissed as preempted by federal labor-contract law."

*Id.* at 220, 105 S.Ct. at 1916 [citations omitted].

The Court further explicated § 301 preemption in *Caterpillar v. Williams,* — U.S. —, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987), a case that is factually similar to this one. Former employees of Caterpillar filed a state action based on state law, alleging breaches of their individual employment contracts, fraud, and other tort claims. Caterpillar removed the case to federal district court, arguing that the alleged individual contracts were "merged into and superseded by the ... collective bargaining agreements." *Id.* at —, 107 S.Ct. at 2428.

The Supreme Court held that removal was improper. Although § 301 completely preempts state law claims related to collective bargaining agreements, the claims alleged by the *Caterpillar* plaintiffs were independent of any such agreement. "Caterpillar's basic error is its failure to recognize that a plaintiff covered by a collective bargaining agreement is permitted to assert legal rights *independent* of that agreement, including state-law contract rights, so long as the contract relied upon is *not* a collective-bargaining agreement." The Court, in a footnote, rejected Caterpillar's suggestion that § 301 requires that "all 'employment-related matters involving unionized employees' be resolved through collective bargaining and thus be governed by a federal common law created by § 301." *Id.* at —, n. 10, 107 S.Ct. at 2432, n. 10.

In the instant case, this Court must examine each of the causes of action plaintiffs have alleged in light of *Allis-Chalmers* and *Caterpillar* to determine whether involve rights guaranteed by a collective bargaining agreement and are thus preempted by § 301 or whether they assert rights independent of any such agreement.

A. *The Misrepresentation and Fraud Claims*

█ Since the *Allis-Chalmers* decision, a number of courts have considered whether state law claims for misrepresentation and fraud are preempted by § 301.[3] In most of these cases, the state law claims were dismissed as preempted. *See, e.g., Gibson v. AT & T Technologies,* 782 F.2d 686 (7th

---

3. In plaintiff's amended complaint, Count I alleges intentional misrepresentation of facts, generally called "fraud" or "deceit" in Maryland; Count II alleges fraud-suppression of fact, generally called "concealment" or "nondisclosure"; and Count III alleges negligent misrepresentation. These related claims will be considered together for the purposes of determining whether they are preempted.

Cir.1986); *Bale v. General Telephone Co. of California*, 795 F.2d 775 (9th Cir.1986). In a typical case, *Martin v. Associated Truck Lines*, 801 F.2d 246 (6th Cir.1986), the plaintiffs asserted claims for negligent and intentional misrepresentation. The plaintiffs were informed by their employer, ATL, that it planned to reduce its work force in Toledo, and since their jobs would be eliminated they would be transferred or relocated. The plaintiffs alleged that their union misinformed them, telling them that if they refused to relocate they would be "voluntary quits" and would lose unemployment benefits and seniority. The plaintiffs then relocated. Had they remained in Toledo and been laid off, they actually would have retained their seniority rights and would have been recalled before ATL hired any new employees. Subsequently ATL did hire new employees and plaintiffs sued, evidently because they had been misled and had relocated when they could have remained in Toledo and been rehired after a brief layoff.

The Sixth Circuit held that the misrepresentation claims were preempted because they were "intertwined with the terms of the collective bargaining agreement," and their resolution would require the court to interpret contract terms like "voluntary quit" and "laid off." *Id.* at 249.

However, in *Anderson v. Ford Motor Co.*, 803 F.2d 953 (8th Cir.1986), the Eighth Circuit held that state law claims were independent of the collective bargaining agreement and thus were not preempted by § 301. There, Ford decided to increase production at a plant in St. Paul, Minn, and needed to hire 250 employees. By agreement with the union, it was required to offer the available jobs to employees on a preferential hiring list made up of former employees who were on indefinite layoff. Plaintiffs were former Ford employees whose recall rights had expired because of the amount of time that they had been laid off. The plaintiffs were hired for a 90–day

probationary period, but before the period expired they were "bumped" by employees rehired from the preferential list.

Plaintiffs asserted a state fraud claim, alleging that Ford had told them they were permanent employees and repeatedly assured them that they would not be "bumped" by preferential hirees. The Eighth Circuit, applying *Allis-Chalmers*, found that the fraud claim was not preempted. It found that a fraud claim did not derive from or depend upon an underlying labor contract and that the standards for judging fraudulent conduct were not derived from contractually-established expectations of the parties.

This case is more analogous to *Anderson* than *Martin*. The plaintiffs have alleged that the defendants misrepresented facts about their job security. However, they do not allege that the defendants violated the bargaining agreement, and it does not appear that resolution of their claims would require interpretation of any term in the agreement. They do not allege injury related in any way to the agreement, and they do not seek remedies provided for in the agreement. Taking plaintiffs' allegations at face value, it appears that their intentional misrepresentation and concealment claims assert rights independent of the collective bargaining agreement and can be resolved without reference to the agreement.[4] Therefore they are not preempted by § 301.

**B.  Public Policy Tort**

Count IV of the Amended Complaint alleged "Retaliatory Discharge in Violation of Maryland Environmental Public Policy." This count is summarized in paragraph 41, which alleges:

Defendant's decision to close the Hagerstown plant, after Fairchild's indictments and convictions for violations of Maryland environmental law, was made for the purposes of thwarting the State

---

**4.** In *Allis-Chalmers* the Supreme Court held that even where a tort was unrelated to an *explicit* provision of the collective bargaining agreement, it could be pre-empted if it was related to a provision or duty *implicit* in the agreement.

Here, the collective bargaining agreement between Fairchild and the plaintiffs' union did not expressly refer to the defendant's duty to inform employees about its plans, and the Court finds no implicit acceptance of such a duty.

of Maryland and the County of Washington from vigorously enforcing their environmental protection laws against the dumping of toxic wastes and, further, to damage plaintiffs and their surrounding community, as well as the local city, county, and school boards, for their political behavior in violation of the Maryland Constitution, Labor Code, and public policy.

The Maryland Court of Appeals recently recognized abusive discharge as a cause of action in *Adler v. American Standard Corp.,* 291 Md. 31, 432 A.2d 464 (1981). *Adler* reviewed the development of the tort in other states and held that Maryland plaintiffs may sue for abusive discharge if they allege that they were terminated for reasons that contravene a clear mandate of public policy. *Id.* at 43, 432 A.2d 464. Since *Adler,* courts have found such contraventions of public policy where an employee allegedly was terminated after attempting to expose corporate bribery and tax evasion, *Adler v. American Standard,* 538 F.Supp. 572 (D.Md.1982); and after taking a lie detector test prohibited by statute, *Townsend v. L.W.M. Management, Inc.,* 64 Md.App. 55, 494 A.2d 239, *cert. denied* 304 Md. 300, 498 A.2d 1186 (1985). The issue here is whether the plaintiffs have alleged sufficient facts to state a claim for wrongful discharge and have identified properly the public policy at stake.

■ At the outset, it is apparent that plaintiffs' claims for abusive discharge in violation of public policy are independent of the collective bargaining agreement and are not preempted by § 301. The plaintiffs do not refer to any collective bargaining agreement and do not seek relief under any such agreement. Defendants contend in their Reply Memorandum that the collective bargaining agreement provided grievance and arbitration procedures to be used in any dispute involving employee discharges. However, the wrong which plaintiffs allege—discharge in retaliation for enforcement of environmental laws—is manifestly not susceptible to ordinary grievance and arbitration procedures. Defendants simply cannot argue persuasively that the plaintiffs could successfully have raised their claims of abusive discharge in violation of public policy through procedures set up to handle routine termination disputes. Accordingly, there can be no concern that those procedures are being circumvented in violation of the congressional policy of promoting arbitration of labor-management conflicts. Defendants' arguments to the contrary are unconvincing.

■ The plaintiffs also assert as a defense the releases that plaintiffs Reid and Baish signed pursuant to the supplemental agreement between Fairchild and the union. Whatever the merit of this asserted defense, *Caterpillar* expressly held that the assertion of a federal question—here, interpretation of the supplemental agreement—in a defensive argument does not transform a state-law action into a federal action. —— U.S. at ——, 107 S.Ct. at 2432.

However, Maryland precedents require that claims for abusive discharge should state specifically the manner in which statutes were offended in violation of public policy. *Adler,* 538 F.Supp. at 578. The plaintiffs have pled this claims only in general terms. In paragraph 14 of their complaint, plaintiffs refer to an investigation of toxic waste leakage at Fairchild that led to 86 state grand jury indictments. They also allege that information that led to those indictments came from Fairchild employees who were later discharged when the plant closed, but fail to identify those employees. In paragraph 39, plaintiffs refer to Fairchild's convictions of toxic waste laws but fail to specifically identify those laws. These allegations seem similar to those in *Adler,* where the Court of Appeals noted that the "allegations suggest serious misconduct, yet [plaintiff] fails to provide any factual details to support the general and conclusory averments of the complaint." 291 Md. at 46, 432 A.2d 464. The Court of Appeals held that Adler's complaint did not provide a sufficient factual predicate for determining whether any declared mandate of public policy was violated and thus failed to state a cause of action for abusive discharge.

More importantly, plaintiffs seek to expand the scope of the abusive discharge tort. In previous cases, courts have allowed abusive discharge claims by individual plaintiffs who alleged that they had committed specific acts and consequently had been discharged for reasons that offended public policy. Here, the plaintiffs seem to allege that they were discharged not because they committed specific acts, but because other employees acted, providing information to investigators about Fairchild's toxic waste leakage.[5] Alternatively, plaintiffs allege that Fairchild discharged its Hagerstown employees in retaliation for actions by the state and county to enforce environmental regulations. Both of these theories depart from the paradigms of *Adler* and *Townsend.*

In light of these questions about the specificity of the complaint and the extension of *Adler* on the facts of this case, the Court will reserve ruling on defendants' motion to dismiss this claim. The motion can best be resolved by a state court on remand.

## C. *Prima Facie Tort*

Count V of the Amended Complaint alleges *prima facie* tort. Paragraphs 44 and 45 assert that the defendants' decision to close the Hagerstown plant was made solely or principally for the purpose of "wreaking economic and social havoc upon plaintiffs and the community they inhabited as citizens and voters."

The plaintiffs' claim of *prima facie* tort may be vulnerable to two attacks by defendants. First, while the tort is well-established in New York, it does not appear to be a recognized cause of action in Maryland. Second, the plaintiffs must establish five elements of the tort: (1) the intentional infliction of harm; (2) without excuse or justification; (3) by an act or series of acts which would otherwise be lawful; (4) resulting in actual temporal damage; and (5) not classified as any other recognized tort. Moreover, New York courts have held that

a *prima facie* tort claim is not stated if the defendant's actions were motivated partly by malice and partly by the defendant's own pecuniary interest. *Filmways Pictures, Inc., v. Marks Polarized Corp.,* 552 F.Supp. 863, 867 (S.D.N.Y.1982). Here, the plaintiffs have alleged only that the defendants acted "solely or principally" for malicious purposes, and will have to prove that Fairchild's decision to close its Hagerstown plant was motivated wholly by malice and not by business considerations.

Because there is no Maryland case law on *prima facie* tort, it again seems appropriate to reserve ruling on defendants' motion to dismiss Count IV until it can be considered by a state court.

## D. *Tortious Interference with Contract*

Count VI of the Amended Complaint alleges tortious interference with contract. In an effort to avoid preemption under § 301 of the Labor Management Relations Act, plaintiffs assert that this contract was "wholly extrinsic to" any collective bargaining agreement. Rather, they assert, the contract was an implicit contract guaranteeing that Fairchild would not terminate its employees without "reasonable notice," that it would attempt to maintain steady employment, and that it would not take malicious or punitive actions against its employees.

This claim might well be preempted under *Allis-Chalmers.* A preemption analysis will not be necessary, however, because this Court finds that Maryland common law precedents bar plaintiffs' claim.

First, Maryland law does not recognize a broad implied promise of good faith and fair dealing independent of any written employment contract. *See Borowski v. Vitro Corp.,* 634 F.Supp. 252, 258 (D.Md.1986); *cf. Adler,* 291 Md. 31, 37, 432 A.2d 464 (1981) (discussing without recognizing implied covenant of good faith and fair dealing). Second, the interference tort

---

**5.** A Fairchild employee who provided information or testimony to authorities about violations of environmental laws, and alleged that Fairchild discharged him as a result, would present

a different case. *See, e.g., Palmateer v. International Harvester Co.,* 85 Ill.2d 124, 52 Ill.Dec. 13, 421 N.E.2d 876 (1981); *Harless v. First National Bank,* 162 W.Va. 116, 246 S.E.2d 270 (1978).

provides a cause of action only against a third party who interferes with a contract. Maryland courts have never permitted recovery where both the plaintiff and defendant were parties to the contract. *Wilmington Trust Co. v. Clark,* 289 Md. 313, 329, 424 A.2d 744 (1981). Thus, as a matter of law, Maryland does not recognize an implied contract of the type alleged by plaintiffs. Even if such contracts were recognized, the plaintiffs cannot recover for tortious interference by a party to the contract. Maryland law is sufficiently settled in this area so that the Court can dismiss Count VI without reaching the preemption issue.

## IV. *Conclusion*

For the foregoing reasons, this Court concludes that counts I, II, III, IV, and V of plaintiffs' amended complaint are not preempted by § 301 of the NLRA. Count VI, even if not preempted, fails to state a claim as a matter of Maryland law and will be dismissed. Accordingly, this case will be remanded to state court for rulings on defendants' motion to dismiss counts IV and V, which raise novel questions of Maryland law, and further proceedings if necessary.

## ORDER

In accordance with the attached Memorandum, it is this 5th day of August, 1987, by the United States District Court for the District of Maryland, ORDERED:

1. That plaintiffs' motion to amend BE, and the same hereby IS, GRANTED;

2. That defendants' motion to dismiss BE, and the same hereby IS, DENIED as to Count I, Count II, Count III, Count IV, and Count V and GRANTED as to Count VI of plaintiffs' amended complaint;

3. That this case BE, and the same hereby IS, REMANDED; and

4. That a copy of this Memorandum and Order be mailed to the parties.