William S. JENKINS, Plaintiff,

v.

PBG, INC., et al., Defendants.

No. CIV.A. AW–03–1305.

United States District Court,
D. Maryland,
Southern Division.

June 20, 2003.

Joe C. Ashworth, Law Offices of Joe C. Ashworth, Leonardtown, MD, for Plaintiff.

Henry Morris, Jr., Savalle C. Sims, Arent Fox Kintner Plotkin and Kahn PLLC, Washington, DC, for Defendants.

## *MEMORANDUM OPINION*

WILLIAMS, District Judge.

William S. Jenkins ("Plaintiff") filed a two-count complaint in the Circuit Court for Prince George's County against PBG, Inc. ("PBG") and his union, Local No. 67, International Brotherhood of Teamsters, Chauffeurs, and Warehouseman ("Local 67"), alleging state law claims of intentional and negligent misrepresentation. PBG filed a notice of removal to this Court based upon federal question grounds.[1] Local 67 has, apparently, not been served,

---

1. No allegation has been made that there is diversity of citizenship, nor is there any apparent diversity of citizenship found on the face of the complaint.

but PBG indicated that the union consented to the removal. PBG filed a motion to dismiss arguing (a) that this Court has removal jurisdiction because the state law claims are completely preempted by § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, *et seq.*; (b) that Plaintiff's claims should be recast as a § 301 claim; and (c) that his claims should be dismissed, either based on the statute of limitations or on Plaintiff's failure to exhaust his administrative remedies. Plaintiff filed no opposition to the motion. Finding that the Court lacks subject matter jurisdiction over the entire case, the Court will DENY the motion and REMAND the case to state court for further proceedings.

## I. FACTUAL BACKGROUND

Plaintiff alleges in his complaint that he was employed by PBG for sixteen years as a transport driver. His union was Local 67. In 1992, he injured his back, but was able to continue working. In 1997, Plaintiff re-injured his back, after which he underwent surgery. At all times relevant to the complaint, Plaintiff's employment was covered by the Collective Bargaining Agreement ("CBA") between the Defendants.

In the Summer and Fall of 2000, Plaintiff made repeated requests for PBG to make accommodations for his back ailment. PBG did not respond to these requests. On December 11, 2000, PBG informed Plaintiff that he would no longer be able to work as a transport driver. On December 18, 2000, representatives from PBG and from Local 67 met with Plaintiff and "informed him that they would assist him" in getting long-term disability benefits.

Plaintiff claims that these claims were false, and that Defendants either made these claims knowing they were false or negligently failing to know they were false. The complaint does not make clear whether or when Plaintiff was terminated. The parties do not dispute, however, that the CBA contains no provision providing PBG employees with long-term disability benefits.

## II. SUBJECT MATTER JURISDICTION

Although the complaint only brings forth state law causes of action, Defendants removed the case to this Court on federal question grounds. PBG argues that because the claims will require "interpretation" of the CBA, they are preempted by federal law. PBG bases the grounds for removal and for the jurisdiction of this Court over the claim on preemption grounds. PBG then seeks dismissal of the federal claim on the merits.

Plaintiff has neither responded to the motion nor has he moved the Court to remand the case. However, the complaint does appear to have anticipated these arguments when it states that resolution "of the claims asserted in this action does not require the Court to construe or interpret the language of the [CBA]" as that document does not contain a long-term disability provision. The Court finds that the dispositive issue in the case is whether the claims are "completely" preempted and whether, as a result, this Court has subject matter jurisdiction. Even though there is no motion to remand, the Court must *sua sponte* consider whether it has jurisdiction. *Cook v. Georgetown Steel Corp.*, 770 F.2d 1272, 1274 (4th Cir.1985).

§ 301 of the LMRA confers jurisdiction on the federal courts to hear disputes between employees/unions and employers regarding violations of labor contracts. *See* 29 U.S.C. § 185(a). Although the statute merely confers jurisdiction, it has been interpreted by the Supreme Court to mean

that the courts must fashion a body of federal common law on these issues. *White v. Nat'l Steel Corp.*, 938 F.2d 474, 481 (4th Cir.1991)(citing *Local 174, Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 104, 82 S.Ct. 571, 7 L.Ed.2d 593(1962)).

■■■ The question whether this case is preempted is tied to the question of whether the case was properly removed. The Supreme Court has stated the general rule concerning preemption and removal jurisdiction:

> Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant. Absent diversity of citizenship, federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction only exists when a federal question is presented on the face of the plaintiff's properly pleaded complaint. The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law.

*Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987)(internal citations omitted). "Occasionally, however, 'the pre-emptive force of a statute is so extraordinary' that any claim based on pre-empted state law is considered a federal claim arising under federal law." *Foy v. Pratt & Whitney Group*, 127 F.3d 229, 232 (2nd Cir.1997)(citing *Caterpillar*, 482 U.S. at 393, 107 S.Ct. 2425). This allows for certain claims to be removed even if all the claims alleged are state claims. *See id.* If, however, the state claims are not preempted, the Court lacks jurisdiction and the claims must either be dismissed or remanded. *Cf. Caterpillar*, 482 U.S. at 399, 107 S.Ct. 2425.

### A) *Preemption*

■■■ Defendants state that the claims are preempted, even though all the counts allege state law causes of action, because the Court will have to interpret and analyze the CBA. They argue that the fraudulent and negligent misrepresentation claims will require interpretation of the CBA to determine whether Defendants made misrepresentations and whether Plaintiff "justifiably" relied on those representations. While the Court agrees with Defendants' general statement of the legal rule, the Court disagrees with them on their application of that rule to this case. Upon review of the facts alleged and the legal principles applicable to preemption in misrepresentation cases, the Court holds that these claims are not preempted and that, therefore, the case must be remanded.

■■■ The Supreme Court originally defined the applicable standard in determining preemption as follows:

> When resolution of a state-law claim is substantially dependant upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim or dismissed as preempted
> . . . .

*Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 220, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). "However, section 301 does not preempt every dispute that tangentially concerns the terms of the collective bargaining agreement." *Beidelman v. Stroh Brewing Co.*, 182 F.3d 225, 232 (3rd Cir. 1999). The fact that the Court will have to consult the CBA during the course of the litigation does not signify that the claim is preempted. *See id.* (citing *Livadas v. Bradshaw*, 512 U.S. 107, 124, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994))(citing *Lingle v. Norge Division of Magic Chef, Inc.*, 486

U.S. 399, 413, n. 12, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988)).

 The Court must begin with the elements of the causes of action to determine whether the Court would need to interpret the CBA in resolving the claims. *See Foy,* 127 F.3d at 233. The elements of an intentional misrepresentation claim in Maryland are: (1) the defendant made a false representation to the plaintiff; (2) the falsity was either known to the defendant or the representation was made with reckless indifference as to its truth; (3) the misrepresentation was made for the purpose of defrauding plaintiff; (4) the plaintiff relied on the misrepresentation and the right to rely on it; and (5) the plaintiff suffered compensable injury resulting from the misrepresentation. *See Nails v. S & R, Inc.,* 334 Md. 398, 639 A.2d 660, 668 (1994). A plaintiff alleging negligent misrepresentation must establish the following elements: (1) the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement; (2) the defendant intends that his statement will be acted upon by the plaintiff; (3) the defendant has knowledge that the plaintiff will probably rely on the statement, which, if erroneous, will cause loss or injury; (4) the plaintiff, justifiably, takes action in reliance on the statement; and (5) the plaintiff suffers damage proximately caused by the defendant's negligence. *See Sheets v. Brethren Mut. Ins. Co.,* 342 Md. 634, 657, 679 A.2d 540 (1996)(citing *Gross v. Sussex,* 332 Md. 247, 259, 630 A.2d 1156 (1993)).

Defendants state matter-of-factly that two of these elements will require interpretation of the CBA (misrepresentation and reliance). A review of the elements of the claims, however, reveals that while the CBA might have to be referenced (for questions of fact), all of those elements can be analyzed without need to "interpret" the CBA. As to the intentional misrepresentation claim, the first three elements do not require any interpretation: they are fact-based questions that do not require the Court to "analyze" the CBA. The Court of Appeals for the Ninth Circuit has put it this way: "Resolution of the first three elements-misrepresentation, knowledge of falsity, and intent to defraud-do not require interpretation of the employees' collective bargaining agreements. Instead, it turns on [plaintiff's] state of mind and involves 'purely factual questions pertaining . . . to the conduct and motivation of the employer.'" *Milne Employees Ass'n v. Sun Carriers, Inc.,* 960 F.2d 1401, 1408 (9th Cir.1992)(citing *Lingle,* 486 U.S. at 407, 108 S.Ct. 1877).[2] Similarly here, whether PBG and/or Local 67 misrepresented Plaintiff's right to disability benefits is purely factual. No analysis of the CBA would be required; this is all the more true because all parties appear to agree that the CBA contains no such provision. This same reasoning applies to all but one of the elements of the negligent representation claim: the element of "justifiable" reliance.

The central issue, therefore, is whether making a determination as to whether Plaintiff was reasonable or "justified" in relying on Defendants' alleged misrepresentations requires an interpretation of any of the CBA's provisions. The Court concludes that while analysis of this element might require the Court to refer to the CBA, it will not require an interpretation of any provision of the CBA. Plaintiff claims that Defendants misrepresented to

**2.** Although *Milne* is from another jurisdiction, the Court finds the reasoning in that case persuasive because in that case the Ninth Circuit was asked to interpret an intentional misrepresentation claim (under California law) that shares the exact same elements as Maryland's comparative cause of action.

him that he would receive long-term disability benefits. He does not allege that Defendants claimed that the CBA contained such an assurance, nor does he assert that Defendants violated the CBA. Determination of whether Plaintiff was "justified" in relying on the misrepresentations will require analysis into what Plaintiff believed (a factual inquiry) and the circumstances surrounding the promises (same). The only time the Court will have to look at the CBA is to confirm that no long-term disability provision exists. Defendants might posit as a defense to the claim that Plaintiff was unreasonable to rely on *any* representations made to him outside of the CBA. But that does not to this Court signify that the CBA will have to be interpreted.

The law in this Court and in many other Circuits buttresses the Court's conclusion, and the law cited by Defendants fails to support removal. First, because the Fourth Circuit has yet to squarely address the issue, Defendants draw wholly upon the holdings of other Circuit's Courts of Appeals. It should be noted at the outset that this Court has decided this very issue and has decided it against Defendants' position. *See Miller v. Fairchild, Inc.*, 668 F.Supp. 461 (D.Md.1987). In *Miller,* plaintiffs alleged that defendants promised employees job security publicly, while privately planning to close plants. The Court, in granting the motion to remand, held that the plaintiffs' claims were not preempted because they could be resolved without reference to the collective bargaining agreement:

> The plaintiffs have alleged that the defendants misrepresented facts about their job security. However, they do not allege that the defendants violated the bargaining agreement, and *it does not appear that resolution of their claims would require interpretation of any term in the agreement.* They do

not allege injury related in any way to the agreement, and they do not seek remedies provided for in the agreement.

*Miller,* 668 F.Supp. at 466 (emphasis added). The Court finds *Miller* to be factually similar in that here the Court will not have to analyze any portion of the CBA.

Courts of Appeals in other Circuits have come to similar conclusions. For example, the Second Circuit in *Foy* was faced with a similar situation, where plaintiffs were promised by the employer that they would have an opportunity to transfer before their jobs were eliminated. Plaintiff brought, *inter alia,* state law claims of negligent and intentional misrepresentation. Defendants successfully removed and, on appeal, Plaintiff challenged whether the case was removable. The Court first held that *only* the element of reasonable reliance would require an analysis of the collective bargaining agreement. *Foy,* 127 F.3d at 239. Defendant claimed that the Court would have to interpret the agreement to analyze whether plaintiffs "reasonably" relied on any alleged misrepresentation. The Court disagreed, stating that defendants' arguments "prove too much: a collective bargaining agreement can always be consulted to determine whether an employee is justified in relying upon an employer's promise." *Id.* The Court concluded:

> In this case, what matters is not so much the accurate construing of the CBA, but plaintiff's understanding of its provisions, and the basis of that understanding. Unlike Allis–Chambers, this case does not involve a tort premised on the violation of duties in the CBA. These plaintiffs' state law misrepresentation claims depend upon the employer's behavior, motivation, and statements, as well as plaintiffs' conduct, their understanding of the alleged offer made to

them, and their reliance on it .... State law-not the CBA-is the source of the rights asserted by plaintiffs: the right to be free of economic harm caused by misrepresentation.

*Id.* at 235 (internal citations omitted); *see also Voilas v. Local No. 731 Int'l Union,* 170 F.3d 367, 377 (3rd Cir.1999)("That is, the reliance inquiry is not, as GM suggests, an investigation of the wisdom of the particular choice made by the claimant, but instead whether the claimant was acting justifiably or reasonably in giving credence to the alleged misrepresentation."); *Berda v. CBS,* 881 F.2d 20 (3rd Cir.1989); *but see Beidleman,* 182 F.3d at 234.

The cases cited by Defendants do not dissuade the Court to hold that removal was inappropriate. Defendants cite to *Bale v. General Tel. Co.,* 795 F.2d 775 (9th Cir.1986) for the proposition that analysis of the CBA would be required. First, *Bale* is factually inapposite; those plaintiffs were alleging breaches of individual contracts and the Court held that the comparison of the two contracts would require analysis of the agreement. Here, as opposed to *Bale,* there would be no need to compare two contracts as Plaintiff does not claim that a separate contract was made (nor does he claim that any promise made was inconsistent with the existing CBA). Second, *Bale* appears to have been discredited by a later Ninth Circuit decision:

> We can only conclude from *Bale's* cursory treatment of the issue that the misrepresentation claims in *Bale* ... involved disputed terms of a labor contract. In contrast, [plaintiffs] do not dispute the meaning of any of the relevant provisions of the CBA, so comparison of the terms of the CBA to [the

employer's] oral representations does not require an interpretation of the CBA.

*Beals v. Kiewit Pacific Co.,* 114 F.3d 892, 895 (9th Cir.1997); *see also Anderson v. Ford Motor Co.,* 803 F.2d 953, 958–59 (8th Cir.1986)(distinguishing *Bale* ).

Defendants' reliance on *Smith v. Colgate–Palmolive Co.,* 943 F.2d 764 (7th Cir. 1991) is also misplaced. First, Defendants fail to note that there was an independent source of jurisdiction in *Smith*-diversity-so that the question there was not whether the action was properly removed. The Court noted that it was an important distinction in evaluating preemption. *See id.* at 771. This also makes Defendants' quoted language dicta. But more importantly, *two* district courts in the Seventh Circuit have interpreted *Smith* in the opposite fashion from the way in which Defendants would have the Court interpret it. In one case, the district court stated that the question of reasonable reliance would not require interpretation of the collective bargaining agreement: "Resolving this issue does not require interpretation of the [CBA's] provision, as that provision is unambiguous on it's face; rather, it requires an examination of [the employer's] behavior, authority, motivation and statements and an analysis of the reasonableness of [plaintiff's] response in light of the existence of the termination clause." *Royal Components, Inc. v. Lid,* 1995 WL 549017 at *6, 1995 U.S. Dist. LEXIS 13180, at *17 (N.D.Ill.1995); *R.L. Schol Carpenter Contractors v. Perinar,* 1998 WL 150705, 1998 U.S. Dist. LEXIS 4018 (N.D.Ill.1998).[3]

## III. CONCLUSION

The Court finds that there is no dispute between the parties as to any pro-

---

**3.** The Court agrees that one 8th Circuit decision is favorable to Defendants' position. *See Schuver v. MidAmerican Energy Co.,* 154 F.3d 795 (8th Cir.1998). As the Court reads *Schu-*

ver to contradict the reasoning of this Court in *Miller* and of the Courts in *Foy, Voilas,* and *Beals,* the Court declines to follow it.

vision of the CBA. Plaintiff has not claimed rights residing in the CBA, nor has he claimed that Defendants violated the CBA. Both parties agree that no provision as to long-term disability benefits exists. Therefore, a Court would have no need to do more than merely refer to the CBA to supplement the factual record on the question of Plaintiff's reliance. Even if this case represents a "close-call", where courts could disagree about whether the claims were preempted, on the question of removal courts are meant to " 'strictly construe the removal statute and resolve all doubts in favor of remanding the case to state court.' " *Richardson v. Phillip Morris, Inc.,* 950 F.Supp. 700, 702 (D.Md.1997)(quoting *Creekmore v. Food Lion, Inc.,* 797 F.Supp. 505, 507 (E.D.Va. 1992)). The claims in the complaint sound only in state law. Having determined that they are not preempted by federal labor laws, this Court lacks jurisdiction to resolve them. The case will thereby be remanded for resolution in state court. An Order consistent with this Opinion will follow.